**UNITED STATES of America**

**v.**

**ADAMS, Tyrone, Appellant in No. 84–5455.**

**UNITED STATES of America**

**v.**

**DiDONATO, Thomas, John Doe, a/k/a "Big Tommy" being a resident of 2833 Ford St., Brooklyn, N.Y.**

**Appeal of Thomas DiDONATO, in No. 84–5456.**

**UNITED STATES of America**

**v.**

**HAIRSTON, John a/k/a "Rip", Appellant in No. 84–5457.**

**UNITED STATES of America**

**v.**

**ALONGI, Anthony a/k/a "Tony", Appellant in No. 84–5458.**

**UNITED STATES of America**

**v.**

**VISCITO, Michael a/k/a "Morgan", Appellant in No. 84–5459.**

**UNITED STATES of America**

**v.**

**MUSTACCHIO, Joseph a/k/a "Joe Mustache", Appellant in No. 84–5460.**

**UNITED STATES of America**

**v.**

**BROOKS, Clifton Raymond a/k/a "Shotsie", Appellant in No. 84–5461.**

**UNITED STATES of America**

**v.**

**GALLICCHIO, Nicholas a/k/a "Monk", Appellant in No. 84–5480.**

**Nos. 84–5455 to 84–5461 and 84–5480.**

United States Court of Appeals, Third Circuit.

Argued March 25, 1985.

Decided April 15, 1985.

Rehearing and Rehearing In Banc in No. 84–5456 Denied May 10, 1985.

Rehearing and Rehearing In Banc in No. 84–5460 Denied May 31, 1985.

1100

Joel Jay Reinfeld (argued), Hackensack, N.J., for appellant Adams.

Judd Burstein (argued), New York City, for appellant DiDonato.

Louis F. Sette (argued), Ridgewood, N.J., for appellant Hairston.

Frank D. Angelastro (argued), Newark, N.J., for appellant Alongi.

Mark J. Treacy, Elmwood Park, N.J., for appellant Viscito.

Michael C. Gaus (argued), Concilio & Gaus, Newton, N.J., for appellant Mustacchio.

Donald T. Smith (argued), Elizabeth, N.J., for appellant Brooks.

George B. Campen (argued), Farmer & Campen, Union City, N.J., for appellant Gallicchio.

Victor Ashrafi (argued), Ralph A. Jacobs, Chief, Appeals Division, U.S. Attorney's Office, Newark, N.J., for appellee.

Before ALDISERT, Chief Judge, SLOVITER, Circuit Judge, and MANSMANN, District Judge.[*]

## OPINION OF THE COURT

ALDISERT, Chief Judge.

This case presents a host of issues arising from the prosecution of a number of individuals involved in a large scale narcotics distribution conspiracy. Of the 46 individuals indicted for participation in the conspiracy, ten defendants went to trial before a jury. The jury convicted the eight appellants before us on a variety of charges, including violating 21 U.S.C. § 846 by conspiring to "distribute and possess with intent to distribute quantities of narcotic drug controlled substances and controlled substances," (count 4); participating in a RICO conspiracy and committing a substantive RICO violation (counts 1 and 2); and use of a telephone to facilitate the narcotics conspiracy in violation of 21 U.S.C. § 843(b) (counts 25, 31, 56, and 59).

Appellants raise a multitude of issues on appeal, covering nearly every aspect of the trial. We affirm in all respects, and will address appellants' arguments seriatim.[1]

I.

The jury convicted the eight appellants of narcotics related charges arising out of a conspiracy operating under the auspices of a purportedly charitable organization, Concern for the Handicapped. The organization was supervised primarily by Nicholas "Nicky Boy" Valvano and his lifelong friend, Stanley Buglione. Although the charity sponsored events that seemingly benefitted the elderly and the handicapped, the main purpose of the organization was the distribution of narcotics.

A social club rented by the organization, at 79 Davenport Avenue, became the clearinghouse for the conspiracy's operations. Appellants, all participants in the organization, trafficked in such drugs as cocaine, speed, and quaaludes. The chain of distribution stretched through several counties in New Jersey and into New York State. Appellants participated in the conspiracy in several ways, including directly buying and selling drugs for the organization, acting as middlemen in the sale of drugs to Concern for the Handicapped, and themselves supplying drugs to the organization.

The primary evidence introduced by the government at trial included transcripts of numerous narcotics related telephone conversations obtained through wiretaps. The government also relied on the testimony of two key members of the conspiracy, Buglione and Albert "Moose" Suppa. On the basis of this evidence, the jury convicted all eight appellants. We now turn to the contentions raised by appellants in this appeal.

II.

Appellants' main contention is that the district court erred in admitting into evidence the statements of Valvano, a coconspirator. They contend that the government failed either to demonstrate the una-

---

[*] Honorable Carol Los Mansmann, of the United States District Court for the Western District of Pennsylvania, sitting by designation.

[1.] Pursuant to F.R.App.P. 28(i), appellants adopted by reference all arguments made by other appellants that could pertain to them.

Although we often phrase our discussion only in terms of the points fully developed in the briefs of particular appellants, we have considered the ramifications of those arguments as to all appellants that could be affected by them.

vailability of the coconspirator or produce him at trial, as required by the confrontation clause, and therefore the statements could not be admitted. Because resolution of this issue involves the interpretation and application of legal precepts; our standard of review is plenary. *Universal Minerals v. C.A. Hughes & Co.*, 669 F.2d 98, 102–03 (3d Cir.1981).

At the outset, we note that the district court correctly determined that to admit the coconspirator's statements, it must rule both that the statements have the required indicia of reliability, *see United States v. Ammar*, 714 F.2d 238, 256 (3d Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983), and that the coconspirator is unavailable. DiDonato App. at A183. The district court, however, based its finding of unavailability on the government's assertion that Valvano would not testify truthfully if he took the stand. *Id.* at A184. The credibility of a witness is not a proper ground for finding him to be unavailable for purposes of the confrontation clause. Notwithstanding this ruling, we still must affirm the judgment of the district court if the decision is correct, regardless of the correctness of the reasoning leading to that decision. *Myers v. American Dental Association*, 695 F.2d 716, 725 n. 14 (3d Cir.1982), *cert. denied*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983). A careful examination of the record in this case convinces us that the government did meet the unavailability requirement.

*United States v. Inadi*, 748 F.2d 812 (3d Cir.1984), established the constitutional requirements for the admission of statements of a coconspirator. *Inadi* requires that the coconspirator must be unavailable or be produced at trial, but permits the government to prove unavailability in a number of ways. *Id.* at 819. One of the ways in which a coconspirator may become unavailable is by claiming his fifth amendment privilege. This is precisely what Valvano did. Although Valvano did not take the witness stand in open court, he did appear before the court in chambers, in the presence of government and defense lawyers. A reporter present recorded the entire proceedings except when Valvano and his lawyer conferred privately. Valvano's lawyer participated by speaker phone, and at the direction of the court, entered his appearance in the case as Valvano's lawyer.

At the beginning of the proceedings in chambers, the court announced:

> The purpose of this is to inquire whether or not Mr. Valvano is available to testify in this case, either on behalf of defendants or on behalf of the government.

DiDonato App. at A171.

In addition, the court later explained:

> Let's turn to the problem in hand, which is the question of the extent to which the government's witnesses, Buglione and Suppa, can testify as to conversations of co-conspirators under the evidence rule and under the confrontation clause....

*Id.* at A177–78. Thus, there is no question that the court conducted an inquiry as to the availability of Valvano.[2]

---

**2.** Relevant aspects of the transcript follow:

THE COURT: I'm informed that we are going to get a call at 9:30 from Mr. Valvano's attorney.

MS. RUSSELL: That's correct. We have asked the Marshals to produce Mr. Valvano this morning.

THE COURT: And here is Mr. Valvano. Let's find a chair for him.

Good morning.

MR. VALVANO: Good morning.

THE COURT: Okay. Mr. Valvano is also present, and we are getting a call, I understand, at 9:30 from Mr. Valvano's attorney, who got notice only very late yesterday afternoon or early evening that we would like to have him here.

He had a prior court commitment this morning so he could not be here.

What I want to do is to discuss the status of Mr. Valvano's testimony, whether he would testify if called, just to get the facts in this regard.

That, Mr. Valvano, is what we are going to do. I don't want to have you say anything until your attorney is on the speaker phone and can advise what we can do.

DiDonato App. at A166–67.

The trial judge, within the "ambit of discretion" reserved to him, *Inadi,* 748 F.2d at 820 n. 7, was not required to rule on Valvano's unavailability only after Valvano had taken the witness stand in open court and claimed his privilege. In view of Valvano's appearance before the court in chambers and his assertion to the court that he would not testify—assertions addressed to the court on the record in the presence of all counsel—the confrontation clause does not require the futile act of calling Valvano to the stand in open court to testify only to have him refuse.

Nor does the recent case of *United States v. Caputo,* 758 F.2d 944 (3d Cir. 1985), command a different result. In *Caputo,* we found the government had not met its burden on the unavailability issue because unavailability was based on the *government's* assertion that the coconspirator would invoke his fifth amendment privi-

lege. *Id.* at 952. Here, however, the coconspirator himself testified at an in chambers hearing that he would claim his privilege. These assertions clearly were sufficient evidence on which the trial court could have found Valvano to be unavailable and thus correctly have admitted his hearsay statements.[3]

Finally, appellants maintain that because the confrontation clause requires the government to make a "good faith effort" to obtain a witness's testimony, *Inadi,* 748 F.2d at 819, the government should have granted Valvano use immunity. Not only is this argument without merit, but appellants raise the issue in a tangential manner, never indicating whether the argument was presented to the trial court. *See* DiDonato Reply Brief at 5 n. 3. The decision to grant immunity is reserved to the discretion of the executive branch. *See In re Grand Jury Matter,* 673 F.2d 688, 696

THE COURT: Put your appearance on the record.

MR. WEICHSEL: John L. Weichsel, 79 Main Street, Hackensack, appearing for Nicholas Valvano.

THE COURT: Mr. Valvano is sitting here next to me and to the court reporter, so he and you are, if not in visible contact, you're in verbal contact.

MR. WEICHSEL: Fine.

THE COURT: The purpose of this is to inquire as to whether or not Mr. Valvano is available to testify in this case, either on behalf of defendants or on behalf of the government.

MR. WEICHSEL: In this case?

MR. VALVANO: Yeah.

MR. WEICHSEL: Can Mr. Valvano hear me?

MR. VALVANO: Yeah.

MR. WEICHSEL: In this case we had discussed over at the Metropolitan Correctional Center whether you were willing to testify for either the government or the defense in this case.

MR. VALVANO: Let me just brief you on something, John, all right?

MS. RUSSELL: Between the two of them?

MR. WEICHSEL: It was my understanding that you did not want to testify for either the government or the defense.

Is that correct, Mr. Valvano?

MR. VALVANO: Yeah, I ain't talked to nobody. I don't even know what I'm doing here.

*Id.* at A171–72.

(The Court, all counsel and the court reporter leave chambers.)

(The Court, all counsel and the court reporter return to chambers.)

THE COURT: All right. You're back?

MR. WEICHSEL: Yes, I'm back.

Mr. Valvano and I have had a discussion, and based upon that discussion Mr. Valvano does not wish to testify for either the government or the defense. And it is his desire not to testify.

THE COURT: All right. That might be his desire. But suppose he's subpoenaed?

MR. WEICHSEL: If he's subpoenaed before sentencing, he would exercise his constitutional right not to testify.

THE COURT: What if he's subpoenaed after his sentencing?

MR. WEICHSEL: I don't think that that right extends after sentencing.

THE COURT: I don't think it does.

MR. WEICHSEL: No. Obviously if he's subpoenaed after sentencing by either side, he would have to testify. But he does not wish to testify and if it is done before sentencing, he will exercise his constitutional rights.

THE COURT: All right.

*Id.* at A174–75.

3. Judge Sloviter adheres to the position expressed in her dissent in *Caputo* that the confrontation clause does not require that a declarant be shown to be unavailable if he is not produced at trial as a condition for the admissibility of a coconspirator statement. She agrees, however, that if a showing of unavailability is necessary, it was adequately made in this case.

(3d Cir.) (Sloviter, J., concurring), *cert. denied sub nom. United States v. Doe,* 459 U.S. 1015, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982). Moreover, because the trial court had no opportunity to address this issue, we decline to reach it here. *See Newark Morning Ledger Co. v. United States,* 539 F.2d 929 (3d Cir.1976).

### III.

Appellants moved for a new trial under F.R.Crim.P. 33 based on newly discovered evidence about a prior crime of Stanley Buglione, one of the government's key witnesses. Our standard of review for the denial of a Rule 33 motion is abuse of discretion. *United States v. Iannelli,* 528 F.2d 1290, 1292 (3d Cir.1976).

In moving for a new trial on the ground of newly discovered evidence, appellants must meet a well established five part test:

(a) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*Id.; United States v. Meyers,* 484 F.2d 113, 116 (3d Cir.1973). As correctly held by the court below, appellants are not entitled to a new trial because they could meet only the first two parts of the test.

The evidence pertaining to a jewel robbery in which Buglione participated clearly was newly discovered evidence, coming to light only after the conclusion of the trial, and was not available during trial through no fault of appellants. The evidence, however, was merely impeaching and almost certainly would not produce an acquittal. Buglione admitted to a minimum of twenty instances of unsavory conduct, ranging from infidelity to his wife to a conviction of misconduct in office while a public official. Government's brief at 31–32. If this evidence did not convince the jury to doubt Buglione's credibility, evidence of another relatively mundane crime would not be the "straw that broke the camel's back." Even if this evidence could convince the jury to disregard Buglione's testimony, the other evidence in the case was more than sufficient to sustain a finding of guilt.

Additionally, appellants Alongi and Mustacchio base their motion for a new trial on the theory that the government's failure to disclose Buglione's participation in the robbery violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under *Brady,* a new trial is justified when "the evidence is material either to guilt or to punishment...." *Id.* at 87, 83 S.Ct. at 1196. In *United States v. Oxman,* 740 F.2d 1298, 1313 (3d Cir.1984), we held that:

[D]efense counsel has a substantial basis for claiming the materiality of evidence impeaching the truthfulness of a prosecution witness when, viewed prospectively as the prosecutor views the evidence before trial, the testimony of the witness incriminates the defendant, and the impeaching evidence significantly impairs the incriminatory quality of that testimony.

For the reasons discussed above, however, a new trial is not merited because the government's failure to disclose the information on Buglione was harmless.

### IV.

Appellants contend that the district court erred in admitting into evidence weapons seized from various members of the conspiracy. Appellants maintain that, under F.R.Evid. 403, the weapons were more prejudicial than probative. We review the Rule 403 decision under an abuse of discretion standard. *In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 269–70 (3d Cir.1983).

Weapons may be as much "tools of the trade" as the most commonly recognized narcotics paraphernalia. *United*

*States v. Picklesimer,* 585 F.2d 1199, 1204 (3d Cir.1978). The police seized the weapons from the homes of Thomas DiDonato, a major supplier of cocaine to the conspiracy, and Glenn DelaMotte, a member of the inner circle of the narcotics conspiracy. The weapons thus had probative value as evidence of the large scale of the conspiracy and the type of protection the conspirators felt they needed to protect their operation. Appellants, however, urge that the types of weapons seized, including an Uzi submachine gun, were overly prejudicial because they were "weapons of extreme violence and looked like they were taken from the set of a Hollywood gangster movie." Alongi brief at 55. Weapons, of whatever kind, usually will suggest a picture of violence to a jury. "Moreover, it is well known that continued exposure to even emotion-arousing objects tends to reduce their effect." *United States v. Cahalane,* 560 F.2d 601, 607 (3d Cir.1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978). In view of the length of the trial, any prejudicial effect from the weapons is merely speculative.

█ Appellants also urge that the trial court erred by not giving a limiting instruction on the relevance of the weapons. None having been requested, and appellants not having suffered prejudice from the lack of an instruction, we hold that the district court did not err.

█ More particularly, John Hairston argues that the lower court erred in not suppressing the .38 caliber handgun seized from his home at the time of his arrest. The district court concluded that police lawfully had seized the weapon in a valid search incident to arrest or as part of a consent search. In reviewing a suppression motion, "the district court's finding of narrative or historical facts are measured by the clearly erroneous test; as to the legal component of its conclusion, however, this court has plenary review." *United States v. Mitlo,* 714 F.2d 294, 296 (3d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 550, 78 L.Ed.2d 724 (1983).

In *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court validated a search of the area into which an arrestee might reach for a weapon made incident to arrest. As the Court stated: "A gun on a table or *in a drawer* in front of one who is arrested can be...dangerous to the arresting officer...." *Id.* at 763, 89 S.Ct. at 2040 (emphasis supplied). Accordingly, we find appellant's distinction that the gun seized was from a dresser near to him, but to the side, to be meaningless. The district court's finding that the weapon was lawfully seized incident to arrest not being clearly erroneous, we uphold its decision not to suppress the weapon. We also need not consider appellant's argument that he did not consent to the search.

## V.

Appellants also allege a variance between the proof and the indictment. Appellants argue that the government's proof evidenced multiple conspiracies, rather than the single conspiracy charged in the indictment.

█ The precepts guiding our review of the variance argument are familiar. Our polestar is to determine whether "there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." *United States v. Palmeri,* 630 F.2d 192, 203 (3d Cir.1980) (quoting *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978)), *cert. denied,* 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981). *See also United States v. Fischbach & Moore,* 750 F.2d 1183 (3d Cir.1984). Additionally, *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), sets forth the two-pronged test appellants must meet to succeed in this specific contention: (1) that there was a variance between the indictment and the proof and (2) that the variance prejudiced some substantial right of the defendants. *Id.* at 752, 756, 66 S.Ct. at 1241, 1243.

█ The government, however, introduced more than sufficient proof of a sin-

gle conspiracy. The conspiracy operated out of 79 Davenport Avenue, under the auspices of Concern for the Handicapped. The common goal of the conspiracy was the sale of drugs for profit; each separate drug transaction was a step in achieving that common goal. As we held in *Fischbach & Moore*, when dealing with an antitrust conspiracy comprised of at least fourteen separate instances of price fixing, the separate transactions were an integral part of the overall conspiracy. 750 F.2d at 1190. To separate the drug conspiracy at issue into multiple conspiracies pertaining to each drug transaction would not only be artificial, but would distort the common goal of the conspiracy.

Because we hold that appellants did not prove a variance between the proof and the indictment, we need not consider the prejudice prong of *Kotteakos*.

## VI.

Appellants Mustacchio and Viscito argue that their convictions should be reversed because count four of the indictment, charging appellants with conspiracy to distribute narcotics, listed the narcotics involved, but did not list marijuana. Yet evidence of marijuana transactions was introduced during the trial. Because appellants' claim is without merit, we affirm their convictions.

Initially, we must determine whether appellants have shown an amendment of the indictment or a variance between the proof and the indictment. As defined by Judge Skelly Wright:

An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment. *Gaither v. United States*, 134 U.S.App.D.C. 154, 413 F.2d 1061, 1071 (1969).

*United States v. DeCavalcante*, 440 F.2d 1264, 1271 (3d Cir.1971). Following the above definitions, appellants have proved a variance. The charging terms of the indictment remained constant—conspiracy to distribute narcotics. The proof, however, included evidence of appellants' involvement with an additional drug not listed in the indictment.

 Having shown the variance, *Kotteakos* requires that appellants also show prejudice to their substantial rights. In making such a determination, we usually focus upon two issues: (1) potential for a double jeopardy problem and (2) unfair surprise to appellants that adversely affected their defense. *United States v. Somers*, 496 F.2d 723, 746 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974). Neither appellant raises a substantial argument that a double jeopardy problem exists. Nor does either appellant allege that his defense was prejudiced. Knowledge that the marijuana evidence would be introduced at trial was available to appellants during the pretrial phase. Appellants thus being unable to show prejudice, we find the variance to be harmless.

## VII.

 Appellant Viscito argues that he was denied a fair trial because the district judge restricted cross-examination about a witness's involvement with the Witness Protection Program. The extent of cross-examination, however, is within the sound discretion of the trial court. A restriction will not constitute reversible error unless it is so severe as to constitute a denial of the defendant's right to confront witnesses against him and it is prejudicial to substantial rights of the defendant. *Government of the Virgin Islands v. Blyden*, 626 F.2d 310, 313 (3d Cir.1980).

 Appellant Viscito, in fact, did cross-examine Suppa about his participation in the Witness Protection Program. 2 Govt.App. at 395. Appellant thus was able to make his crucial point, that of impeaching the witness. As the trial court found, any further cross-examination would im-

pugn Suppa's credibility only marginally, while posing the danger that the other defendants would be severely prejudiced by a discussion of the threats that necessitated Suppa's joining the program. The trial judge not having abused his discretion, we find no error.

## VIII.

Appellant Alongi objects to the admission of several exhibits of evidence on various grounds. All of Alongi's arguments, however, are without merit.

Alongi first argues that the trial court erred in admitting three exhibits of documents because the government had not pre-marked the evidence as the court's discovery order required. In regard to discovery matters, the district court's decision is reviewed under an abuse of discretion standard. *United States v. Liebert*, 519 F.2d 542, 547 (3d Cir.), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 301 (1975); F.R.Crim.P. 16(d)(2). Because the admission of the evidence did not prejudice appellant, the trial court did not abuse its discretion in admitting it.

The evidence corroborated the government's theory that Alongi introduced Buglione to "Richie," a primary source of cocaine for the conspiracy. Even though the defense had notice of the exhibits only on the day the government introduced them, the trial court found the defense had adequate time to respond to the evidence. This is especially true because the exhibits were only corroborative. Alongi argues that he was prejudiced because in his opening he referred to the lack of physical evidence against him. The reference, however, was only minor and was not such an integral part of the opening as to cause appellant any prejudice.

Appellant also contends that parts of Buglione's testimony relating to their initial meeting and three taped telephone conversations between Alongi and Valvano were irrelevant. Because the F.R.Evid. 402 relevancy decision implicates the interpretation and application of legal precepts, our review is plenary. *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 269 (3d Cir.1983).

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." F.R.Evid. 401. Buglione's testimony was relevant to demonstrate Alongi's connection to the conspiracy and to prove that he was instrumental in procuring a source of cocaine for the conspiracy. Likewise, the taped conversations were relevant because they showed Alongi's connections with Valvano, one of the ringleaders of the conspiracy.

## IX.

Appellants Gallichio and Adams argue that the district court incorrectly denied their motions for a mistrial on the ground of prosecutorial misconduct. In evaluating the prosecutor's conduct, we must decide "whether [his] remarks, in the context of the entire trial, were sufficiently prejudicial to violate defendant's due process rights." *United States v. Scarfo*, 685 F.2d 842, 849 (3d Cir.1982), *cert. denied*, 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). A conviction will be reversed "only in those situations in which prejudice inures to the defendant from the challenged improprieties." *United States v. Somers*, 496 F.2d 723, 737 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974). In the context of the entire trial, the prosecutor's remarks, if improper at all, were either trivial or could have been blunted by a curative instruction that appellants did not request.

Gallichio contends that the prosecutor should not have inquired whether a witness testified for Gallichio because he was afraid.[4] This question represented a

4. The prosecutor initially twice asked the witness whether he knew of Gallichio's "reputa-

tion." Gallichio's counsel objected to these questions, and the trial court sustained the ob-

time honored means of trying to impeach the witness by showing that he had been intimidated into testifying favorably for or reject based on the witness's answer to this subject in the prosecutor's closing was an acceptable reference to the government's theory of why the witness testified favorably—a theory the jury could accept or reject based on the witness' answer to the question.

 Adams argues that the reference in the prosecutor's closing to Norma Webber, a woman with a criminal conviction, as an associate of Adams mandates reversal. The prosecutor made only a single reference to Ms. Webber in his closing. The reference was not protracted and the judge responded to an objection by saying he would strike all reference to Ms. Webber. Although the judge gave no cautionary instruction, none was requested. Considering the trial as a whole, this slight reference to Ms. Webber did not prejudice appellant's rights.

## X.

 Appellant Mustacchio argues that the district court abused its discretion by sentencing him to an excessively high prison term and sentencing him in a disparate fashion from the other defendants involved in the conspiracy. In the usual criminal case, our review of a sentence imposed by the district court is extremely circumscribed. *United States v. Felder*, 706 F.2d 135, 137 (3d Cir.1983). *But see* Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 213(a), 98 Stat. 1837, 2011 (1984) (to be codified at 18 U.S.C. § 3742(a) (effective Nov. 1, 1986) (will allow review of sentences under limited circumstances after Act's effective date). Generally, if the sentence falls within the statutory maximum, the matter is not reviewable on appeal. *United States v. Dickens*, 695 F.2d 765, 782 n. 26 (3d Cir.1982), *cert. denied*, 460 U.S. 1092, 103 S.Ct. 1792, 76 L.Ed.2d 359 (1983). We may review the sentence,

however, if there is a showing of illegality or abuse of discretion. *United States v. Fessler*, 453 F.2d 953, 954 (3d Cir.1972). The judge justified Mustacchio's sentence, which was within that prescribed by law, on a number of grounds, including his "deep involvement" with the ringleaders of the conspiracy, his previous convictions, and his unwillingness to move away from a life of crime. 2 Mustacchio App. at 481–82. Based on this reasoning, the judge did not abuse his discretion.

Moreover, these reasons explain the difference in the sentences meted out to the other defendants. Although convicted on the drug distribution charge, or other crimes as serious, the judge found the other defendants' involvement in the conspiracy to be not as extensive and their potential for rehabilitation more promising. Thus, the difference in sentences signifies no abuse of discretion on the part of the trial court.

## XI.

 Appellants Mustacchio and Gallicchio also urge that the district court should not have denied their motions for severance. Our standard of review is whether the lower court abused its discretion. *United States v. DiPasquale*, 740 F.2d 1282, 1293 (3d Cir.1984). Under this standard, appellants bear a heavy burden in challenging the denial of a severance. *Id.*

 Appellants argue that a severance was required because only a small portion of the evidence related to them. However, "[a] defendant is not entitled to severance merely because the evidence against a codefendant is more damaging than that against him." *United States v. Dansker*, 537 F.2d 40, 62 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). *See also United States v. Riccobene*, 709 F.2d 214, 226 (3d Cir.), *cert. denied*, — U.S. ——, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983). Some exacerbating cir-

jections. After a sidebar conference, the court permitted the prosecutor to ask the witness if he was testifying because he was intimidated, and

required the prosecutor to take the witness's answer as it stood, without benefit of follow-up questioning.

cumstances, such as the jury's inability to "compartmentalize" the evidence, are required. *Dansker,* 537 F.2d at 62.

■ Appellants have failed to prove any exacerbating circumstances. The district court was careful to sever the affiliated weapons charges because of the undue prejudice they might generate. The remaining charges all fell under the umbrella conspiracy operating out of the Concern for the Handicapped organization. To the extent that a single conspiracy was charged, no severance was required. *Riccobene,* 709 F.2d at 226. As to the compartmentalization argument, the government structured its case to avoid spillover of prejudicial evidence. The government presented the evidence relating to appellants' drug transactions in a manner designed to highlight their involvement in the conspiracy. Appellants' conclusory allegations of a spillover effect do not meet their burden for justifying a reversal.

## XII.

■ Appellant Mustacchio urges that the trial court abused its discretion in denying his motion for a bill of particulars. Again, on this issue, our standard of review is abuse of discretion. *United States v. Addonizio,* 451 F.2d 49, 64 (3d Cir.1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). "The denial of a motion for a bill of particulars does not amount to an abuse of discretion unless the deprivation of the information sought leads to the defendant's inability to adequately prepare his case, to avoid surprise at trial, or to avoid the later risk of double jeopardy." *Id.*

■ We cannot say that the district court abused its discretion on the facts of this case. Mustacchio argues that lack of a bill of particulars impeded his ability to plead double jeopardy. Yet he does not explain what other crimes in which he was involved could form the basis of a double jeopardy claim and necessitate a bill of particulars. Additionally, appellant alleges that introduction of evidence pertaining to a marijuana transaction in which he was involved unfairly surprised him. Yet appellant knew prior to trial that this evidence would form part of the government's case, giving him an adequate time to respond. Finally, Mustacchio argues that a bill of particulars would have provided information that he needed to prepare his case adequately. Beyond these conclusory statements, however, Mustacchio can point to no specific instance during the trial in which his defense was prejudiced by lack of information. Rather, he identifies times when his defense effort was, at the most, inconvenienced. Such a complaint does not justify reversal.

## XIII.

■ Appellants Adams, Alongi, Brooks and Mustacchio contend that the jury had insufficient evidence to convict them. In reviewing their convictions, we must determine whether "there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." *United States v. Palmeri,* 630 F.2d 192, 203 (3d Cir.1980) (quoting *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978)), *cert. denied,* 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981). We find appellants' argument to be totally without merit.

The evidence, including the testimony of Suppa and Buglione, two ringleaders of the conspiracy, and a number of tape recorded conversations overwhelmingly demonstrated the existence of a wide ranging conspiracy operating under the auspices of Concern for the Handicapped. The only task remaining for the government was to prove appellants' connection to that conspiracy.

■ Adams alleges that the evidence was sufficient to show that he possessed drugs only for his personal use, and not for distribution. The evidence of Adams's receipt of three ounces of speed over a short period of time, coupled with statements from the taped conversations, permitted the jury to infer that Adams was distributing drugs.

■ Alongi's argument also fails. Evidence of a transaction in which Alongi received four ounces of speed and returned shortly thereafter with $1800 could have formed the basis for the jury's verdict. Moreover, Alongi's relationship with "Ritchie," the cocaine supplier, also could have convinced the jury that Alongi actively was involved in the conspiracy to distribute drugs.

■ Brooks's argument is much more general. He argues that he had no connection to the conspiracy whatsoever. The taped telephone conversations, however, the lactose seized during his arrest, and the quantities of cocaine he received clearly proved that he was distributing narcotics. Brooks argues, relying on *Kotteakos*, 328 U.S. 750, 66 S.Ct. 1239, that his dealings were solely with Glen Dela-Motte and that he had no connection with the larger conspiracy. Knowledge of all the particular aspects, goals, and participants of a conspiracy, however, is not necessary to sustain a conviction. *Blumenthal v. United States*, 332 U.S. 539, 558, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1947). We find the evidence sufficient to prove Brooks knew he was part of a larger drug operation.

■ Finally, Mustacchio's contentions also fail. The evidence was sufficient to show that he was involved in the conspiracy's marijuana importation scheme, regardless of whether that transaction was successful. Moreover, Mustacchio lived at 79 Davenport Avenue for several weeks. Thus, he cannot be heard to deny that he did not understand the nature and extent of the conspiracy.

For the above reasons, we reject appellants' sufficiency of the evidence arguments.

### XIV.

Appellants Mustacchio and Alongi object, for several reasons, to the use of wiretap evidence at their trial. Appellants' arguments demonstrate no error on the part of the district court.

Mustacchio first contends that the government conducted the wiretaps in violation of 18 U.S.C. §§ 2510–2520. Specifically, he alleges that (1) the government's applications for the wiretaps failed to set forth an adequate showing of probable cause, (2) the government failed to exhaust other avenues of investigation, (3) the government failed to minimize non-pertinent conversations, (4) the government failed to obtain proper authority for the wiretaps from the Attorney General, and (5) the government failed to name defendant Mustacchio as a target in the second application for an extension. Because these issues implicate the application and interpretation of legal precepts, our standard of review is plenary. *Universal Minerals*, 669 F.2d at 102–03. We hold that the government adhered to the requirements necessary to operate a wiretap and that the trial court properly admitted the evidence against Mustacchio.

■ To obtain authorization for an interception of a wire communication, the government must show that: "(a) there is probable cause for belief that an individual is committing, has committed or is about to commit a particular offense enumerated in section 2516... (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception...." 18 U.S.C. § 2518(3). Probable cause clearly was evident on the face of the affidavit in support of the wiretap. The affidavit detailed the activities occurring at 79 Davenport Avenue, discovered through several informants and a number of undercover drug purchases.

■ Likewise, the affidavit explained why normal investigative techniques would be of no avail. The danger involved and the strong possibility of discovery of the investigation merited use of the wiretaps. Moreover, the government need not exhaust all possible traditional investigative techniques prior to applying for the wiretap. *United States v. Vento*, 533 F.2d 838, 850 (3d Cir.1976).

Although the number of non-pertinent calls intercepted—482—appears on its face to be high, when considered in light of the scope of the conspiracy, the government did minimize the intrusion. The conspiracy not only involved a large number of individuals, but the participants also took care to speak in coded language. Appellant also can demonstrate no pattern to the interception of non-pertinent calls. Because of the variety of voices and transactions involved, the government's efforts at minimizing non-pertinent conversations was acceptable. *Id.* at 853.

Mustacchio also argues that the wiretap was illegal because authorized by Assistant Attorney General Archer of the Tax Division, not the Assistant Attorney General in charge of the Criminal Division. Section 2516(1), 18 U.S.C., permits an Assistant Attorney General to authorize a wiretap. Appellant alleges that there were conditions on Archer's authorization of the wiretap, but introduces no proof that Assistant Attorney General Archer's signature was in violation of these conditions. The authorization for the wiretap is thus presumed to be facially valid. *United States v. Jabara,* 618 F.2d 1319, 1326–27 (9th Cir.), *cert. denied,* 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 70 (1980).

Finally, Mustacchio argues that the wiretap was improper because the government failed to name Mustacchio as a target in its application for a second extension of the wiretap. The information necessary to name appellant as a target, such as transcripts of telephone calls involving Mustacchio, was not available to the government until after the application was filed. Moreover, even had this justification for not naming Mustacchio been unacceptable, suppression of taped conversations would not be the proper remedy. *United States v. Donovan,* 429 U.S. 413, 435–37, 439, 97 S.Ct. 658, 671–73, 674, 50 L.Ed.2d 652 (1977).

Appellant Alongi contends that the trial court's refusal, on relevance grounds, to permit him to read into evidence parts of the agent's affidavit that formed the basis for the wiretap was error. We do not so hold. Our review of this relevancy decision is plenary. *In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238, 269 (3d Cir.1983).

Appellant sought to read portions of the affidavits naming targets of the wiretaps, alleging that because his name was not mentioned in the applications for wiretaps he was not involved in the drug conspiracy. The lower court correctly found that this evidence was not relevant. The initial suspicions of the government that Alongi was not part of the conspiracy were disproved by subsequent investigation. Moreover, to permit Alongi to introduce the affidavits would only require the government to enter into an extremely complicated explanation of the wiretap application process in an effort to explain why Alongi was not named initially.

Finally, Mustacchio alleges that the lower court erred by admitting into evidence transcripts of the recorded conversations. Our standard of review is abuse of discretion. *United States v. Cahalane,* 560 F.2d 601, 607 (3d Cir.1977). The trial court clearly did not abuse its discretion in admitting the transcripts. The transcripts were a useful aid to the jurors. Furthermore, the judge instructed the jury that the tape recording controlled over the transcript in case of error or ambiguity. The transcripts thus were properly admitted into evidence.

## XV.

Appellants Adams and Viscito attack their convictions under the RICO counts of the indictment. Specifically, Adams charges that the court should have instructed the jury that to convict him of a RICO conspiracy, the jury had to find that he agreed to commit *personally* two or more predicate acts of racketeering. Likewise, Viscito alleges that he could not be convicted of a RICO conspiracy because the jury acquitted him of the RICO substantive offense. His argument also rests on the theory that his conviction was inval-

id because the government did not prove he personally committed two predicate offenses.

Because resolution of this issue turns on statutory construction involving the interpretation and application of legal precepts, our standard of review is plenary. *Universal Minerals*, 669 F.2d at 102–03. In reviewing the particular jury instruction, we must "determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury." *Ayoub v. Spencer*, 550 F.2d 164, 167 (3d Cir.), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977). *See also United States v. Park*, 421 U.S. 658, 675, 95 S.Ct. 1903, 1913, 44 L.Ed.2d 489 (1975).

Although this issue has been alluded to in other opinions, *see United States v. Riccobene*, 709 F.2d 214 (3d Cir.1983); *United States v. Boffa*, 688 F.2d 919, 937 (3d Cir. 1982), this court has not discussed in detail whether a defendant must commit or agree to commit personally predicate acts of racketeering to be found guilty of a RICO conspiracy. Other courts of appeals, however, have devoted much time to this issue and have reached conflicting results. *Compare United States v. Carter*, 721 F.2d 1514, 1529–31 (11th Cir.), *cert. denied sub nom. Morris v. United States*, — U.S. ——, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984); *United States v. Brooklier*, 685 F.2d 1208, 1220 (9th Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983) (personal commission not required) *with United States v. Ruggiero*, 726 F.2d 913, 921 (2d Cir.), *cert. denied sub nom. Rabito v. United States*, — U.S. ——, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *United States v. Winter*, 663 F.2d 1120, 1136 (1st Cir.1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983) (personal commission required). We now decide that to be convicted of a RICO conspiracy, a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts.

We are particularly impressed by the analysis of Judge Johnson in *United States v. Carter*, 721 F.2d at 1528–31, and adopt that reasoning as our own. As the Eleventh Circuit noted, the statutory language itself does not require the personal commission of predicate offenses. "When read together, the statutes speak only to 'conspiring to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity, i.e., two acts of racketeering activity within at least ten years of each other.' " *Id.* at 1529. Moreover, requiring the government to prove that each defendant agreed to commit personally two predicate acts would severely dilute the effectiveness of the RICO conspiracy remedy, and thwart Congress's objectives in enacting those statutes. *See id.; United States v. Local 560, International Brotherhood of Teamsters*, 581 F.Supp. 279, 331 (D.N.J.1984).

By not requiring the personal commission of predicate offenses, we must affirm Viscito's conviction on the RICO conspiracy count. As to Adams, the court correctly instructed the jury on the elements necessary to convict appellant, in much the same language as that approved by this court in *Boffa*, 688 F.2d at 937.

## XVI.

Appellants Adams, Alongi, and Viscito contend that the district court erred by not dismissing the telephone facilitation counts, under 21 U.S.C. § 843(b), because the counts failed to name a particular controlled substance. They rely on *United States v. Hinkle*, 637 F.2d 1154 (7th Cir. 1981), for the proposition that a telephone count that does not name a particular controlled substance is defective.

In *Hinkle*, the court held that an indictment for violation of 21 U.S.C. § 843(b) must specify certain details about the offense. 637 F.2d at 1158. The telephone counts in this case met all the requirements of *Hinkle* except that they did not name a particular controlled substance. The indict-

ment went beyond the requirements of *Hinkle*, however, in that it specified the exact time of the telephone communication on a particular date and the persons involved in the communication. Furthermore, unlike *Hinkle*, the indictment set forth the offense that was facilitated by use of a telephone, a conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846. In contrast, the indictment in *Hinkle* merely charged facilitation of an offense under 21 U.S.C. § 841(a)(1) without identifying which of six types of acts prohibited by that section the defendant had facilitated. The court's objections in *Hinkle* to the bareness of the indictment simply do not apply to this case.

Moreover, we do not regard the holding of *Hinkle* as an inflexible test of the sufficiency of an indictment charging a violation of 21 U.S.C. § 843(b). The district court in this case applied the test of *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974), to judge the sufficiency of the indictment. In *Hamling*, the Supreme Court stated:

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.

Under this test, the telephone counts against appellants clearly were sufficient. They charged violation in the language of the statute as to precisely identified telephone calls. The district court ruled correctly that appellants had sufficient notice of the charge against them and could plead an acquittal or conviction as a bar to future prosecution.

## XVII.

We have considered all the contentions presented by the appellants and conclude that the judgment of the district court will be affirmed.