**UNITED STATES of America, Plaintiff,**

v.

**Leonard PELULLO, Defendant.**

**No. Crim. 94–276.**

United States District Court,
D. New Jersey.

June 12, 1998.

dered); U.S.S.G. § 5E1.1; *see generally United States v. Golino,* 956 F.Supp. 359, 365–66 (E.D.N.Y.1997) (Weinstein, J.).

Faith S. Hochberg, United States Attorney by Mark W. Rufolo, Leslie Faye Schwartz, Assistant U.S. Attorneys, Newark, NJ, for plaintiff.

Herbert Beigel, Aaron C. Horowitz, Buffalo Grove, IL, for defendant.

## OPINION

DEBEVOISE, Senior District Judge.

Defendant, Leonard A. Pelullo, moves (i) for an order vacating a July 14, 1997 order on the ground that the order was based upon a factually erroneous premise and (ii) for production of tapes and transcripts of defendant's telephone conversations while he was in prison. For the reasons set forth below both motions will be denied without an evidentiary hearing.

### A. Background

In November 1996 a jury found defendant guilty on one count charging him with conspiracy to embezzle $4,176 million from two employee pension benefit plans and to engage in money laundering, on 11 counts of embezzlement from these employee pension benefit plans, and on 42 counts of money laundering. Thereafter defendant moved for a judgment of acquittal or a new trial. The motion was denied on April 17, 1997.

Subsequently defendant moved for reconsideration of the denial of his motion. One of the grounds advanced in support of the new motion was that newly discovered evidence disclosed that the government violated his Fifth Amendment due process rights and his Sixth Amendment right to counsel. According to defendant:

In its response brief dated April 10, 1997 to Mr. Pelullo's post-trial motion, the government disclosed for the first time that it had reviewed tapes of all of Mr. Pelullo's conversations pursuant to grand jury subpoenas issued between June 28, 1995 and November 8, 1995. These tapes were made of conversations Mr. Pelullo had while in prison. The grand jury subpoenas were issued in Philadelphia on an unrelated matter.

\* \* \* \* \* \*

The government's possession and review of tapes of these attorney client privileged communications was not disclosed before or during the trial. Ex. 43, Verification of Herbert Beigel dated May 19, 1997. The only tapes the government disclosed involved tapes of conversations between Mr. Pelullo and Andrew Heine. Included within these attorney client tapes were hundreds of conversations Mr. Pelullo had with his attorneys in this case, and other connected cases, including the Philadelphia and Jacksonville criminal actions. As to this case, Mr. Pelullo discussed his defense strategy with Edward Plaza and David Fassett, his court appointed attorneys. See Certifications of Edward J. Plaza and David Fassett dated May 2, 1997, ¶ 4, Exh. 44. Plaza and Fassett explain the detailed strategy that they discussed with Mr. Pelullo in their conversations:

\* \* \* \* \* \*

The tapes also contain conversations between Mr. Pelullo and his attorneys from the Philadelphia criminal action. In these conversations, the issues discussed included the post-trial motions and appeal from the fourth trial in Philadelphia. Mr. Pelullo also discussed the overlap between the Newark, Philadelphia and Jacksonville cases with his attorneys in Philadelphia (Howrey & Simon), Newark (Arseneault & Krovatin), Jacksonville (Baumer, Bradford & Walters), among other attorneys.

The government seized and reviewed these privileged conversations. These seizures were a knowing intrusion into Mr. Pelullo's attorney client relationship by which the government obtained confidential privi-

leged communications concerning Mr. Pelullo's pretrial and trial strategy.

Pelullo's Brief at pp. 2–4.

As will be discussed in further detail below, these allegations are demonstrably wrong in a number of critical respects.

(i) *Allegation:* "... [on] ... April 10, 1997 the government disclosed for the first time that it had reviewed tapes of all of Mr. Pelullo's [prison] conversations...." *Fact:* The government attorneys handling the Newark prosecution never reviewed the prison tapes. Before and during the 1997 trial they advised defendant's counsel of the existence of taped recordings of certain of defendant's prison telephone conversations. They did not listen to these conversations or read the transcripts. They made available to defense counsel (but did not themselves read) transcripts of conversations defendant had with Andrew Heine.

(ii) *Allegation:* "The government's possession and review of tapes of these attorney client privileged communications was not disclosed before or during trial." *Fact:* The circumstance that the United States Attorney's Office in the Eastern District of Pennsylvania possessed and reviewed these tapes was disclosed to defense counsel before and during trial, and after receipt of the Andrew Heine transcripts defendant did not pursue the matter further, despite the fact that earlier in the proceedings defendant had moved for the production of the tapes. The tapes and transcripts were not attorney client privileged communications.

*Allegation:* "Included within these attorney client tapes were hundreds of conversation Mr. Pelullo had with his attorneys in this case, and other connected cases, including the Philadelphia and Jacksonville criminal actions. As to this case, Mr. Pelullo discussed his defense strategy with Edward Plaza and David Fassett, his court appointed attorneys." *Fact:* None of the intercepted conversations were with defendant's attorneys in this case. Instead of "hundreds" of conversations between defendant and his attorneys, an assistant United States Attorney in the Eastern District reviewed two tape recordings of conversations between defendant and attorneys. These attorneys and

conversations had nothing to do with this case and, as will be discussed below, the conversations were not protected by the attorney client privilege. In addition, the government in the Eastern District screened calls between defendant and persons known to be attorneys, and there occurred seven such calls which were neither listened to nor transcribed.

At the time when defendant's motion for reconsideration was under review the Assistant United States Attorneys handling this case were unaware that any of the intercepted conversations were with attorneys and so represented to the court. The prison authorities had been directed to furnish tapes of telephone calls to designated numbers, none of which were telephone numbers of attorneys. At argument the government raised the possibility that during a telephone call defendant might have requested the person with whom he was talking to place a third party call (a practice forbidden by prison rules) and that the third party might have been an attorney.

Based on the information available to me and the United States Attorney's Office in New Jersey, I ruled as follows:

> While Pelullo's legal principles are sound, his factual premise, that the government obtained "all" of his conversations between June 28, 1995 and November 8, 1995, is flawed. The subpoenas which were issued at the request of the United States Attorney's Office in the Eastern District of Pennsylvania requested that FCI Fairton, New Jersey, where Pelullo was confined, to provide all recorded conversations of his during that period made to specifically identified telephone numbers. None of those numbers were those of the persons then representing defendant—Edward J. Plaza, Esq., David W. Fassett, Esq., or W. David Talbert, II, Esq.

> Herbert Beigel, Esq., was not representing Pelullo during the June to November 1995 period. If recordings of inmate telephone conversations are made in the Union County Jail, to which Pelullo was transferred for the trial of this case, none were

obtained by the government. Mr. Beigel entered the case while Pelullo was at the Union County Jail.

There is no evidence to support the conclusion that any government attorney either in the District of New Jersey or in the Eastern District of Pennsylvania has had possession of any recorded conversations between Pelullo and any of his attorneys. There is no evidence that the government attorneys trying this case had any knowledge from any source of communication between Pelullo and his attorneys.

*U.S. v. Pelullo,* 971 F.Supp. 159, 161 (D.N.J. 1997).

In light of information which the United States Attorney's Office in the Eastern District provided in a proceeding there, it now appears that that office possessed recorded conversations between defendant and certain of defendant's attorneys. In its response to defendant's petition for disclosure of grand jury matters, the United States Attorney stated, "... in fact, the government is aware of the contents of only two taped conversations between Pelullo and an attorney, neither of which had anything to do with his criminal indictments in Pennsylvania, Florida or New Jersey." Response at p. 2. In addition it has been disclosed in connection with the present motions that agents of the FBI who listened to the tapes provided by the prison authorities had been instructed to not listen to or have transcribed conversations with attorneys. Pursuant to this practice on seven occasions it appeared that an attorney was involved. On each of those occasions the tape was stopped, not listened to further and not transcribed.

Defendant's present motion is based upon his contention that this new information requires that the order denying his motion for reconsideration be vacated.

## B. *The Taped Conversations*

Defendant was the subject of protracted criminal proceedings in the Eastern District of Pennsylvania. After a fourth trial he was convicted on January 27, 1995 on a RICO count and 46 wire fraud counts. He appealed, and the Court of Appeals vacated his conviction on one count and remanded for further proceedings.

After his January 27, 1995 conviction in the Eastern District defendant was incarcerated at the Federal Correctional Institution at Fairton, New Jersey. There he made an extraordinary number of telephone calls on a telephone which the Bureau of Prisons made available for inmate 'use. Under Bureau of Prison regulations, the prison staff monitors and records telephone conversations of inmates. 28 C.F.R. § 540.102 (1996). This is standard practice at all federal prisons. Inmates are advised that their telephone calls will be subject to monitoring, and signs are posted by each monitored telephone advising of this practice. Defendant is highly sophisticated in the ways of the law and prison procedures and surely knew that his calls were monitored and recorded.

If an inmate wishes to speak to an attorney a separate line is made available on which conversations are neither monitored nor recorded. Defendant submitted affidavits of several inmates who stated that when they conversed with an attorney on an unmonitored telephone the guard stayed in the room and could listen to the conversation. This was not in accordance with regulations; if it happened to defendant he is neither too shy nor too unknowledgeable to protect his rights; it does not change the fact that telephone calls on other lines are recorded and monitored.[1]

Further, inmates are prohibited from making third party calls—using the party called to connect the inmate with another party. It appears that defendant violated this prohibition.

In 1995 defendant became the subject of another criminal investigation in the Eastern District. A grand jury subpoenaed the re-

---

**1.** In further support of his motion defendant referred the court to *Casey v. Lewis,* 834 F.Supp. 1553 (D.Ariz.1992) in which the court entered an order designed to ensure the right of inmates in Arizona state prisons to have full access to their attorneys on unmonitored telephones. This case has no relevance whatsoever to defendant's situation. Few persons in or out of prison have had such continuous, intensive use of attorneys as has defendant as he monitored and orchestrated from prison the many civil and criminal proceedings to which he was and is a party.

cordings of defendant's telephone conversations for a limited period of time. In order to obtain the recordings it was necessary to specify the telephone numbers called by defendant. None of the numbers which the United States Attorney's office specified were those of defendant's attorneys. On two occasions the recordings involved telephone calls to non-attorneys and during the conversation the non-attorney placed an attorney on the line. Neither of these attorney conversations related to the criminal proceedings in New Jersey and were, of course, conducted during the monitored call.

Andrew Heine is an attorney, but he was not representing defendant. There were recordings of approximately 11 telephone calls from defendant to Heine placed directly or by third party calls. These calls were introduced at a hearing on a forfeiture matter arising out of the Eastern District conviction. The court held that the conversations were not privileged and that they were in furtherance of an ongoing criminal conspiracy between Heine and defendant. Knowing that Heine was a possible government witness in the New Jersey criminal case, and because the tapes had been publicly disclosed, the Eastern District United States Attorney's Office provided the tapes to the New Jersey United States Attorney's Office.

The New Jersey Assistant United States Attorney handling the criminal case against defendant did not listen to the tapes or read the transcripts. He simply turned over the transcripts to defendant's counsel. There is no evidence that the New Jersey United States Attorney's Office received any other tapes or transcripts or had any knowledge of their contents.

### C. *Motion to Vacate Order*

The issue is whether the additional information that the United States Attorney's Office in the Eastern District reviewed transcripts of defendant's conversations with two attorneys requires that the July 14, 1997 order denying defendant's motion for reconsideration be vacated. For multiple reasons this new information has no effect on the prior determination.

First and foremost, to the extent that defendant engaged in telephone conversations with attorneys on the monitored line the communications were not privileged. Defendant had no expectation of privacy in these conversations. They were knowingly made in the presence of the Bureau of Prisons through its taping and monitoring procedures. This constitutes a waiver of any privilege that might otherwise have existed. *United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357 (D.Mass.1950); *U.S. v. Noriega,* 764 F.Supp. 1480, 1487–88 (S.D.Fla.1991).

Even if the two attorney conversations which an Assistant United States Attorney for the Eastern District reviewed were protected by the attorney client privilege, defendant's motion lacks merit. The United States Attorney for the District of New Jersey had no knowledge of their existence until very recently and has never reviewed them or been informed of their contents or the contents of any recorded conversations. In fact they do not relate to the criminal proceedings in this district.

Defendant was aware of the recorded conversations before the trial of the New Jersey case. It was on the basis of this knowledge that after the trial he moved on the ground that "[i]ncluded within these attorney client tapes were hundreds of conversations Mr. Pelullo had with his attorneys in this case, and other connected cases...." Defendant's speculations in this respect happen to be wrong, but had they been correct he should have sought appropriate relief before or during the trial.

There was no improper attempt on the government's part to intrude upon defendant's attorney client relationship. Even though the monitored calls are not privileged, the United States Attorney's Office in the Eastern District subpoenaed only recordings of telephone calls made to persons who were not defendant's attorneys in any of the criminal proceedings. Where a conversation included an attorney as a participant (a rare occurrence indeed) this happened either because the person to whom the call was made put an attorney on the line or defendant, in violation of prison rules, had the person

called place a third party call. Thus any conversation with an attorney was only inadvertently recorded, and the responsibility for this inadvertence lay with defendant.

Defendant has suffered no conceivable prejudice from the inadvertent interception of the two attorney conversations. The conversations did not relate to the New Jersey criminal proceedings and the New Jersey United States Attorney's Office was not informed of the existence or substance of the conversations until recently. No member of the prosecutor team in either New Jersey or Pennsylvania received or reviewed any communication between defendant and any of his attorneys in the instant case.

Thus the recorded attorney conversations were not protected by the attorney client privilege. Even if the two recorded conversations between defendant and an attorney were protected by the attorney client privilege defendant would not be entitled to the relief he seeks in the present motion or the relief he sought in prior motions.

### D. *Motion for Production*

Defendant moved for an order requiring the government to produce (i) any trial subpoena issued to FCI Fairton, FCI Schuylkill or the Union County Correction Facility for tapes of defendant's conversations and (ii) any tapes and transcripts supplied by those institutions in response to the subpoenas. It is defendant's contention that the investigative team in the Eastern District listened to these tapes, that the Eastern District investigative team cooperated with the team prosecuting the Newark criminal proceedings, and that information about the substance of the tapes must have flowed back and forth.

█ The Eastern District United States Attorney's Office is conducting a grand jury investigation relating to matters peculiar to that district and having nothing to do with the criminal proceeding in New Jersey. In effect defendant seeks disclosure of material produced for the grand jury in the Eastern District. This might be helpful to him in his defense against new charges in the Eastern District; it has no bearing in the instant case. If defendant thought these subpoenas and tapes were useful in the defense of this case he should not have abandoned his pretrial motion for their production and he should have sought them before or at the trial rather than waiting to demand them by way of a fourth post trial motion during the pendency of an appeal.

Notwithstanding the fact that the subpoenas demanding production of the taped conversations were denominated trial subpoenas and the material may have been used at one or more hearings, they constituted grand jury material. Disclosure is severely limited by Fed.R.Crim.P. 6(e). The kinds of disclosures made during the course of the Eastern District proceedings were of the kind permitted by Rule 6(e). Such disclosures do not entitle defendant to have access to this material. If defendant's motions were granted there would be disclosure of the direction of the grand jury's investigation, the identities of potential witnesses, and the identities of potential targets.

Defendant has not demonstrated a particularized need which would overcome the public interest in grand jury secrecy. There is no reason to believe the material sought has any bearing on the New Jersey criminal proceeding. It does not constitute material protected by the attorney client privilege. The only two conversations between defendant and an attorney were not privileged and in any event were not with any attorneys involved in the New Jersey criminal proceeding.

Defendant asserts that the Heine transcripts which were furnished to him were edited. There are places where these transcripts state "(Non–Pertinent Conversation Edited)." As mentioned above the Newark prosecutor team did not review these transcripts but furnished defendant with a copy during the trial. Defendant did not use them in connection with the cross-examination of Heine or otherwise. If defendant were bothered by the fact of "Edited" material (meaning, no doubt, "Omitted" material), the objection should have been made at that time rather than waiting until his fourth post trial motion. This is not a circumstance justifying departure from the secrecy mandate of Rule 6(e).

There is nothing that could be produced at an evidentiary hearing which would alter these conclusions. The facts necessary for a decision on both motions are either a matter of public record or beyond dispute. I shall file an order in conformity with this opinion.