**UNITED STATES of America,**

v.

**Leonard PELULLO, Defendant.**

**Criminal No. 94–276(DRD).**

United States District Court,
D. New Jersey.

July 16, 1997.

Faith S. Hochberg, U.S. Attorney by Mark W. Rufolo, Assistant U.S. Attorney, Leslie Fay Schwartz, Assistant U.S. Attorney, Newark, NJ, for U.S.

Herbert Beigel, Aaron C. Horowitz, Chicago, IL, for Leonard Pelullo.

## OPINION

DEBEVOISE, Senior District Judge.

On April 17, 1997 there were filed an opinion and order denying defendant Leonard Pelullo's motion for a judgment of acquittal or for a new trial. Thereafter Pelullo moved for i) reconsideration of the denial of his motion, ii) for a new trial or other relief on the ground that newly discovered evidence discloses that the government violated his Fifth Amendment due process rights and his Sixth Amendment right to counsel, and iii) for a new trial on the ground that newly discovered evidence discloses that Fred Schwartz, Esq., an important government witness, moved to resign from the Florida bar for five years after admitting to embezzling more than $200,000 from a client in 1994 (more than two years before the trial in this case) and was the subject of federal criminal investigations.

For the reasons set forth below Pelullo's motions will be denied in their entirely.

■ 1. *Motion for Reconsideration:* Pelullo devotes only four pages of his brief to his argument for reconsideration. He advances no reasons in law or in fact which were not addressed in great detail at the time of his original motion.

Under Local Civil Rule 7.1(g) there shall be served with a motion for reargument "a brief setting forth concisely the matters or controlling decisions which counsel believes the Judge or Magistrate Judge has overlooked." The brief sets forth no such matters. A motion for reargument is not to be used as a vehicle to reargue matters already considered. Where the motion raises only a party's disagreement with the Court's initial decision, that "should be dealt with in the normal appellate process, not on a motion for reargument." *Florham Park Chevron, Inc.*

v. *Chevron U.S.A., Inc.* 680 F.Supp. 159, 163 (D.N.J.1988). Since Pelullo's motion raises only disagreement with the initial decision, it will be denied.[1]

2. *Pelullo Interceptions:* Pelullo moves for a new trial pursuant to Fed.R.Crim.P. 33 on the ground of newly discovered evidence. According to Pelullo:

> In its response brief dated April 10, 1997 to Mr. Pelullo's post-trial motion, the government disclosed for the first time that it had reviewed tapes of all of Mr. Pelullo's conversations pursuant to grand jury subpoenas issued between June 28, 1995 and November 8, 1995. These tapes were made of conversations Mr. Pelullo had while in prison. The grand jury subpoenas were issued in Philadelphia on an unrelated matter.

\* \* \* \* \* \*

The government's possession and review of tapes of these attorney client privileged communications was not disclosed before or during the trial. Ex. 43, Verification of Herbert Beigel dated May 19, 1997. The only tapes the government disclosed involved tapes of conversations between Mr. Pelullo and Andrew Heine.

Included within these attorney client tapes were hundreds of conversations Mr. Pelullo had with his attorneys in this case, and other connected cases, including the Philadelphia and Jacksonville criminal actions. As to this case, Mr. Pelullo discussed his defense strategy with Edward Plaza and David Fassett, his court appointed attorneys. *See* Certifications of Edward J. Plaza and David Fassett dated May 2, 1997, ¶ 4, Ex. 44. Plaza and Fassett explain the detailed strategy that they discussed with Mr. Pelullo in their conversations:

\* \* \* \* \* \*

The tapes also contain conversations between Mr. Pelullo and his attorneys from the Philadelphia criminal action. In these

---

1. Pelullo notes two factual errors in the opinion. At page 12 of the opinion it is stated that Paribas was a Pelullo corporation. It was an investment banking firm which Granada Investments, Inc. hired to assist with the takeover of DWG Corp. At page 34 of the opinion it is stated that on

December 4, Adorno, Zeder & Allen wired $900,000 to the 174 account at the Summit Bank. In fact Hellhake carried the $900,000 from Adorno, Zeder & Allen to New Jersey in the form of a cashier's check.

conversations, the issues discussed included the post-trial motions and appeal from the fourth trial in Philadelphia. Mr. Pelullo also discussed the overlap between the Newark, Philadelphia and Jacksonville cases with his attorneys in Philadelphia (Howrey & Simon), Newark (Arseneault & Krovatin), Jacksonville (Baumer, Bradford & Walters), among other attorneys.

The government seized and reviewed these privileged conversations. These seizures were a knowing intrusion into Mr. Pelullo's attorney client relationship by which the government obtained confidential privileged communications concerning Mr. Pelullo's pretrial and trial strategy.

Pelullo's Brief at pp. 2–4.

It is readily apparent that if the government had been intercepting and recording Pelullo's telephone conversations with his attorneys during his preparation for and the conduct of the trial in this case due process and his Sixth Amendment right to counsel would be implicated. E.g., *Black v. United States,* 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966); *Coplon v. United States,* 191 F.2d 749 (D.C.Cir.1951).

While Pelullo's legal principles are sound, his factual premise, that the government obtained *"all"* of his conversations between June 28, 1995 and November 8, 1995, is flawed. The subpoenas which were issued at the request of the United States Attorney's Office in the Eastern District of Pennsylvania requested that FCI Fairton, New Jersey, where Pelullo was confined, to provide all recorded conversations of his during that period made to specifically identified telephone numbers. None of those numbers were those of the persons then representing defendant—Edward J. Plaza, Esq., David W. Fassett, Esq., or W. David Talbert, II, Esq.

Herbert Beigel, Esq., was not representing Pelullo during the June to November 1995 period. If recordings of inmate telephone conversations are made in the Union County

Jail, to which Pelullo was transferred for the trial of this case, none were obtained by the government. Mr. Beigel entered the case while Pelullo was at the Union County Jail.

There is no evidence to support the conclusion that any government attorney either in the District of New Jersey or in the Eastern District of Pennsylvania has had possession of any recorded conversations between Pelullo and any of his attorneys. There is no evidence that the government attorneys trying this case had any knowledge from any source of communication between Pelullo and his attorneys.[2]

Pelullo's Fifth Amendment and Sixth Amendment rights have not been violated by the recording of his prison conversations during the June–November, 1995 period.

■ 3. *Schwartz Embezzlement:* At the trial of this case Fred Schwartz testified extensively concerning the ATTS (Away to Travel South) transaction. The trial took place between mid-september and mid-November 1996. On April 17, 1997 Pelullo's motion for a judgment of acquittal or for a new trial was denied. On May 20, 1997 Pelullo moved for reconsideration of his motion and further moved for relief on the ground of newly discovered evidence which purportedly showed that the government had intruded into his attorney-client relationship. On June 2, 1997 Pelullo supplemented his motion for further relief on the ground of newly discovered evidence concerning Fred Schwartz.

Pelullo learned through an April 7, 1997 newspaper article that Schwartz had admitted misusing more that $200,000 which a client had entrusted to him and that he had resigned from the Florida bar. On May 24 Pelullo's counsel obtained the files relating to the ethics proceedings against Schwartz.

The files revealed that on May 2, 1994 Schwartz received $293,944.98 from the United States government representing the proceeds of a settlement in a forfeiture proceed-

---

**2.** In the course of investigation in the Eastern District of Pennsylvania the United States Attorney's Office in that District obtained taped recordings of certain of Pelullo's telephone conversations during his incarceration. As noted above there is no evidence that they concerned attor-

ney-client communications. Further, Pelullo was aware of these interceptions prior to the trial of this case and they were the subject of previous applications. Thus they do not constitute "new" evidence.

ing which the government had instituted against Schwartz's client Ivory McCutcheon. The money was placed initially in the trust account of the Adorno & Zeder law firm. McCutcheon instructed Schwartz to use the money to pay off tax liens on various properties which McCutcheon owned. Schwartz withdrew the money from the Adorno & Zeder trust account (apparently on a forged signature of McCutcheon). He used approximately $70,000 to pay tax liens but appropriated approximately $223,000 to his own use.

In March 1996 Schwartz visited McCutcheon in jail, admitted most of his thefts and promised to repay the stolen funds. On August 23 McCutcheon executed an ethics complaint in which he set forth the details of his transactions with Schwartz. On November 1 Schwartz's attorney submitted a response to the complaint in which Schwartz admitted using $205,000 of the funds entrusted to him for personal expenses. On December 13 Schwartz's attorney advised the ethics authorities that Schwartz would submit to a three year disciplinary resignation, or, if required, a five year disciplinary resignation. The attorney also disclosed that the stolen funds had been restored by means of a loan from Schwartz's parents.

On February 20, 1997 the Florida Supreme Court granted Schwartz's petition for a five year resignation, after which Schwartz could seek readmission to the bar. The Florida prosecutor's office is still considering whether to bring criminal charges against Schwartz.

Pelullo first learned of these events when the April 7, 1997 newspaper article came to his attention. The government first learned of these events when it received defendant's motion papers. Obviously, had the government been aware of these facts at the time Schwartz testified, it would have been obligated to disclose them to Pelullo as *Giglio* material. However, it was unaware of Schwartz's ethical breaches, and therefore no *Giglio* or *Brady* issues are implicated.

■ The Court of Appeals for the Third Circuit employs a five part test to determine whether newly discovered evidence merits a new trial. *U.S. v. Adams*, 759 F.2d 1099, 1108 (3d Cir.), *cert. denied*, 474 U.S. 971, 106

S.Ct. 336, 88 L.Ed.2d 321 (1985); *U.S. v. Lipowski*, 423 F.Supp. 864 (D.N.J.1976). The five components are: (1) the evidence must be in fact newly discovered, i.e., discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal.

Pelullo meets the first two of these criteria. He did not discover this evidence until April 1997, well after the conclusion of the trial. Since presumably attorney ethics proceedings in Florida are not disclosed to the public until the Florida Supreme Court acts on the matter, Pelullo could not have been expected to know of these proceedings until after the Supreme Court entered its order on February 20, 1997. He moved with diligence after learning of Schwartz's discipline and the reasons therefor.

However, Pelullo does not meet the last three criteria for a new trial.

■ The newly discovered evidence would be useful for impeachment purposes only. Such evidence as a general rule will not support a motion for a new trial. *United States v. Spencer*, 4 F.3d 115 (2d Cir.1993). In the present case this new information was not material, it certainly would not have produced an acquittal; in fact it would only have added to the strength of the case against defendant. It would have been one more example of defendant's uncanny ability to induce weak, greedy, gullible, and/or corrupt people to further his own dishonest ends.

A number of witnesses other than Schwartz, established the nature and circumstances of the improvident "loan" of pension fund moneys to ATTS. Included among these witnesses were Joseph Vendi, the original owner of the travel agency business; David Hellhake; and Jeffrey H. Beck, the trustee in bankruptcy of the travel agency before its sale to ATTS. They established, among other things, the riskiness of the venture. Also included were David Neifeld whom Pelullo

hired to help negotiate the purchase of Ambassador Travel's assets and Bonnie Lynn who was deeply involved at Pelullo's direction in the operation of ATTS, who reported its financial condition to Pelullo and who had knowledge of the use of ATTS assets for the benefit of Pelullo and his other companies.

The documentary evidence showing the sham nature of the loan transaction, the transfer of funds out of secure pension fund brokerage accounts into the Adorno, Zeder trust account and the use of substantial amounts of these funds for Pelullo's personal benefit constituted irrefutable evidence which depended in no way upon Schwartz's testimony.

Pelullo did not offer a substantial challenge to Schwartz's account of the ATTS transaction. In fact the defense developed helpful testimony from Schwartz and in its closing argument relied on his role in the ATTS transaction to establish its *bona fides:*

*** But it's one thing which we'll deal with to hear from the government what lackey and a puppet David Hellhake was. But in order for you to sign onto the government's vision here, you would have to conclude that Fred Schwartz is a crook and a puppet of Mr. Pelullo and that he authorized disbursements of money from the one million three loan in a totally inappropriate way.

You saw Mr. Schwartz on the stand. You saw how he responded to my questions. He's anything but a puppet. The man clearly is a confident, smart lawyer who understands the business world, understands questions, knows how to disagree.

This isn't a man who sat at Adorno, Zeder and conspired with Mr. Pelullo to do something wrong because nothing wrong was done.

It is apparent that Pelullo's motion for a new trial on the ground of the newly discovered evidence that Schwartz stole funds from a client does not meet the last three criteria for the granting of such a motion.

■ 4. *Schwartz Grand Jury Investigation:* Shortly before the hearing on Pelullo's motions, he supplemented the information concerning proceedings against Fred Schwartz.

The United States Attorney's Office in the Southern District of Florida conducted an investigation of one of Schwartz's clients, Alberto San Pedro, suspecting him of recruiting prison inmates to sign false affidavits. Schwartz was not a target of the investigation. It was concluded on September 26, 1996 with no charges being brought against anyone. That preceded Schwartz's testimony at defendant's trial. The Assistant United States Attorneys handling the matter in Fort Lauderdale were unaware of Schwartz's role as a witness in the Pelullo case and the Assistant United States Attorneys handling the Pelullo case were unaware of the investigation of Schwartz's client until the hearing on the pending motions.

In April 1994 the United States Attorney's Office in the Southern District of Florida commenced a criminal investigation concerning a number of individuals suspected of being part of a narcotics organization. In January 1996 Schwartz became a subject (not a target) of the investigation because he had represented some of the individuals. The United States Attorney's Office sought to ascertain if Schwartz had counseled certain members of the narcotics organization not to cooperate against certain individuals and offered to have the leader pay their attorney's fees. No charges have been filed against Schwartz. The Assistant United States Attorneys handling the matter in Florida were not aware that Schwartz was a potential witness at the Pelullo trial, and the Assistant United States Attorneys handling the Pelullo case were not aware of the Florida investigation until June 23, 1997 when they received Pelullo's supplemental motion papers.

In early June, 1997, long after the conclusion of Pelullo's trial, the United States Attorney's Office in the Southern District of Florida opened a criminal tax investigation arising out of Schwartz's mishandling of Ivory McCutchen's funds entrusted to his care. The embezzlement is further described in section 3 above.

All this information goes solely to credibility. It is highly problematical whether cross-examination on these subjects would have

**164**

been permitted. The tax investigation had not begun until well after the conclusion of the Pelullo trial. The investigation of Pelullo's client, Alberto San Pedro, who was suspected of soliciting false affidavits was an unlikely subject of cross-examination of Schwartz, particularly as the investigation ended before Schwartz testified without charges being brought against anyone. Likewise, the investigation commenced in April 1994 was primarily an investigation of certain of Schwartz's clients. Although Schwartz became a subject of the investigation, the investigation has not yet resulted in any charges against anyone.

There is no evidence of any expectation on Schwartz's part that he might receive favorable treatment from the government for helpful testimony. Schwartz's own testimony was evidence to the contrary. At every turn he sought to place as favorable a light as possible on the ATTS loan, thus protecting his own (and incidentally Pelullo's) reputation. When asked if he intended to defraud the pension plans, he responded "I don't think anybody did. I think everybody, including Mr. Pelullo, wanted to pay the pension fund back." (Tr. At 1734).

This new evidence, like the other new evidence upon which Pelullo relies, could not have affected the outcome of the trial. The facts of Pelullo's involvement in the ATTS loan were corroborated almost beyond dispute by other evidence. Any evidence that Schwartz was a scoundrel could only have had the effect of seriously weakening his efforts to portray his (and incidentally Pelullo's) intentions in a favorable light.

Thus the latest information which Pelullo has submitted is not a basis for a new trial.

I shall file an order implementing this opinion.