**UNITED STATES of America,**

v.

**Cory CARMICHAEL, Defendant.**

**No. 02–632 (JBS).**

United States District Court, D. New Jersey.

July 2, 2003.

Christopher J. Christie, United States Attorney, by: Jason M. Richardson, Assistant U.S. Attorney, Camden, NJ, for the United States of America.

Saul J. Steinberg, Esquire, Sufrin, Zucker, Steinberg & Wixted, Camden, NJ, for Defendant Cory Carmichael.

## *OPINION*

SIMANDLE, District Judge.

On January 15, 2003, defendant Cory Carmichael was convicted by a jury upon a one-count indictment of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant then filed a motion for a Judgment of Acquittal notwithstanding the verdict, pursuant to Federal Rule of Criminal Procedure 29(c), and, in the alternative, a new trial based upon newly discovered evidence, pursuant to Federal Rule of Criminal Procedure 33. The new evidence consists of a subsequent confession and testimony before this Court at a hearing on June 18, 2003, by Shavar Harvey admitting to the possession and placement of the gun in question which, if true, exonerates Carmichael of the crime for which he was convicted. For the following reasons, defendant's motion for a Judgment of Acquittal will be denied, and his motion for a new trial will be granted.

## BACKGROUND

In the early hours of May 2, 2002, defendant was arrested for the unlawful possession of a weapon which was found on the floor of the front porch of defendant's friend, Julia Young, at 1623 Pulaski Street in Camden, New Jersey. At trial, Ms. Young testified that when she arrived home from work on May 1, 2002 at approximately 11 p.m., she noticed Shavar Harvey, a juvenile, standing on her porch. *See* Tr. 1/14/01, at 76, 78. She told Mr. Harvey to get off of her porch and went into the house. *Id.* at 80. Shortly after, a Camden Police Officer, Officer Pike, observed Carmichael and Harvey in the vicinity, and he came to Ms. Young's door and told her that he had found a weapon on her porch and asked her if she was expecting anybody. *Id.* at 83. Young told the officer that she was not expecting anyone, and that the handgun found on her porch did not belong to her. *Id.* Officers Pike and Ramos both testified at trial that they had observed Carmichael at or just inside the front porch door, bending down, to the spot where the gun was found. Carmichael testified that he knew nothing about the gun and that his purpose for being in the vicinity was to look after Julia Young's house, since she had told him earlier that juveniles had been on her porch that night. He testified that he was indeed near the front door and had chased a juvenile named Shavar off her porch as the Camden police officers came on the scene. The police arrested Carmichael, without detaining Harvey. Harvey, then a juvenile in violation of curfew, has since turned 18 years of age.

The trial testimony may be summarized as follows, as it illuminates the background of both the motion for judgment of acquittal and the motion for a new trial.

### a) Testimony of Officer Pike

Officer Pike testified that on the evening of May 1, 2002, he was on routine patrol of the area of Sheridan and Pulaski. *See* Tr. 1/13/03, at 6. That evening he witnessed three to four individuals standing on the southwest corner of Sheridan and Pulaski. *Id.* at 9. He testified that he heard someone in the crowd yell, "Yo!" very loudly before the individuals dispersed. *Id.* Shortly after, Officer Pike returned to the area with two other officers, Officer Ramos and Officer Tatem, to determine if there was any further suspicious activity. *Id.* at 11. Officer Pike testified that he again witnessed three individuals standing on the corner, one of whom was a juvenile, Mr. Harvey, and one of whom was the defendant. *Id.* at 12, 35. According to Officer Pike, as he turned his car onto Pulaski, defendant was standing on the corner, and once defendant saw the patrol car he began to walk away slowly towards Ms. Young's house. *Id.* at 42. Officer Pike testified that he parked his car on Pulaski, approximately four car lengths from Ms. Young's home, exited the police car, and observed the defendant and the juvenile walking towards him. *Id.* at 14, 17. At this point Officer Pike stated that he was approximately 20 feet from defendant. *Id.* at 22. After observing defendant knock on the door of Ms. Young's house, Officer Pike asked defendant if he lived there, to which defendant replied no. *Id.* at 14, 16. The officer testified that he then observed the defendant walk up the steps to the screen door, open the door, walk onto the porch and bend down. *Id.* at 18. Officer Pike testified that defendant then came off the porch and stood in front of the home, at which point Officer Pike was approximately five to ten feet away. *Id.* at 21. He asked defendant what he was doing, to which the defendant replied, "Nothing." *Id.* at 22. Officer Pike then entered the porch and found a

handgun on the lower left portion before the column, leaning up against the wall. *Id.* at 25, 27.

#### b) Testimony of Officer Ramos

Officer Ramos also testified at trial. His version of events was similar to Officer Pike's, though the defense does point out some inconsistencies, such as the fact that Officer Ramos had testified that when Officer Pike got out of his car, the defendant began to walk away from him, whereas Officer Pike had testified that the defendant was walking towards him. *See* Df. Br., at 7. Further, Officer Ramos testified that defendant only put his left arm onto the porch, whereas Officer Pike testified that his entire body was on the porch. *Id.* at 8. Defendant also points out that discrepancies exist with regard to the distance that defendant was from Officer Pike when he allegedly entered the porch. *Id.* at 5.

#### c) Testimony of Defendant

Defendant Cory Carmichael's testimony at trial sets forth a different version of events. Carmichael testified that on the evening of May 1, 2002, he was bowling when he received a call from Ms. Young, who told him that someone was standing on her porch when she arrived at home. *See* Tr. 1/14/03, at 153, 155. Carmichael then left the bowling alley at approximately 11 p.m., took a co-worker home, and drove to Ms. Young's house. *Id.* at 155–57. According to defendant's testimony at the December 19, 2002 pre-trial hearing, Carmichael, who has a key to the front door, regularly stops by Ms. Young's house to check on her home and her children. *See* Tr. 12/19/02, at 63. This was confirmed by Julia Young's testimony, dis-

cussed below. Defendant testified at trial that when he arrived at Ms. Young's house that evening, he parked on the southwest corner of the intersection of Sheridan and Pulaski. *See* Tr. 1/14/03, at 157. He stated that he then got out of the car, walked towards Ms. Young's house, and saw Mr. Harvey and another individual coming out of the door of Ms. Young's porch. *Id.* at 158. According to defendant, after telling the individuals to get off the porch, the individuals walked away and "not even" two minutes later police officers came around the corner from Sheridan onto Pulaski, stopping at about the fifth house on the block, three past Julia Young's. *Id.* at 158–59, 175.[1] The defendant claimed that he started walking towards Officer Pike and met him somewhere between his police car and the door to Ms. Young's house. *Id.* at 160. At this point defendant claims he was three house lengths away from Ms. Young's house. *Id.* at 166. Defendant testified that it was at that point that Officer Pike asked him what he was doing, to which he replied that he was telling the other individuals to stay off Ms. Young's porch. *Id.* Defendant claims that Officer Pike then instructed him to stand approximately three houses away from Ms. Young's house while the officers went onto the porch. *Id.* According to defendant, after the officers retrieved the gun from Ms. Young's porch, they spoke to Mr. Harvey for a short time, and then Officer Pike handcuffed defendant and put him in the back of the patrol car. *Id.* at 161. Defendant testified that the gun did not belong to him and at no point that evening did he knock on Ms. Young's door. *Id.* at 161, 163.

---

1. This Court notes that in the December 19, 2002 pre-trial hearing at which the Court heard the parties' arguments on defendant's motion to suppress certain evidence, the de-

fendant had testified that the time lapse was approximately 20 seconds. *See* Tr. 1/14/03, at 176; Tr. 12/19/02, at 66.

#### d) Testimony of Julia Young

Julia Young testified at trial that she lives at 1623 Pulaski Street with her three children, and that Cory Carmichael lives and works in the neighborhood. On May 1, 2002, she worked at her job at Bancroft Neuro Health until about 10:15 p.m. and picked up her children from her grandmother's house and brought them home. *See* Tr. 1/14/03, at 75–76. She got home about 10:45 p.m. and noticed someone standing on her porch, a juvenile named Shavar, whose last name she did not know. *Id.* at 77–78. She told Shavar to get off her porch, and he passed her coming off her porch as she entered. *Id.* at 80. Ms. Young saw Shavar go back towards the corner of Sheridan and Pulaski, two houses away. *Id.* at 81, 93. She was mad at Shavar but not scared of him; she did not know him but saw him hanging around the neighborhood. *Id.* at 82.

Julia Young testified that Carmichael was like a big brother to her, and that he comes to her house approximately three times a week to watch her children sometimes while she works. *Id.* at 84–85, 100. Defendant also cuts the children's hair at his barber shop. *Id.* at 91. Ms. Young testified that she and defendant speak often, and that she called him from work on his cell phone that evening, before 10:00 p.m., while he was bowling. *Id.* at 84–85, 90. Ms. Young testified that Carmichael said that he might come by, using his key to her house. *Id.* at 84–85. Ms. Young testified that she did not believe Carmichael knows Shavar, and did not believe that Carmichael hangs out at the corner by Sheridan. *Id.* at 93, 99.

Young testified that the police came and knocked on her door after she had put the children to bed, perhaps an hour or hour and a half after arriving home from work.

*Id.* at 82–83, 93. The police told her that they found the gun on her porch and asked if it was hers. *Id.* at 83–84, 94. She had no knowledge of a gun and had never known Carmichael to have a gun.

#### e) Testimony of Shavar Harvey before Grand Jury

Shavar Harvey did not testify at trial. However, he did testify before the Federal Grand Jury on August 20, 2002, about his role in defendant's case, and he set forth yet another version of events. *See* Def. Letter, Ex. B at 2.[2] At the time of his testimony, Harvey was 17 years old and had known defendant for five years, as the defendant cut his hair on occasion. *Id.* at 6. Mr. Harvey testified that on the evening of May 1, 2002, he was on his way home when defendant picked him up to give him a ride to his aunt's house. *Id.* at 9. He stated that on the way, defendant parked his car on the corner of Sheridan and Pulaski to stop by Ms. Young's house. *Id.* at 9–10. The two got out of the car, and, according to Mr. Harvey, defendant was on the front step of Ms. Young's house with his hand on the door when the officers pulled up, stopped them from entering the house, searched them, and then went onto the porch and found a gun. *Id.* at 10. Mr. Harvey stated that at the time defendant approached the door, he was approximately four feet behind defendant. *Id.* at 12. He testified that he did not see defendant open the screen door, and that he later told police officers that he did not know to whom the gun belonged. *Id.* at 14. Mr. Harvey also denied being on Ms. Young's porch at any time that evening. *Id.* at Ex. C, Tr. 8/20/02 III at 3. Neither party called Mr. Harvey as a trial witness.

---

**2.** Defendant's letter dated May 19, which addresses newly discovered evidence, will hereinafter be referred to as Df. Letter.

As will be discussed in a moment, Shavar Harvey has now testified that much of what he stated to the grand jury was a lie, designed to deflect suspicion from himself.

### PROCEDURAL HISTORY

The defendant's trial took place on January 13–15, 2003. [Docket Item # 20–1, 21–1, 23–1.] On January 15, 2003, the jury returned a guilty verdict on Count 1, and a sentencing hearing was scheduled for April 25, 2003. [Docket Item # 23–1.] On January 22, 2003, the defendant filed a motion for Judgment of Acquittal, or in the alternative, a new trial, claiming the verdict was against the weight of the evidence. [Docket Item # 27–1.] A brief in support of the motions was filed on April 17, 2003, and the government answered on May 9, 2003.

On May 19, 2003, the defense submitted a letter brief in light of newly discovered evidence, specifically, an affidavit dated April 24, 2003 from Mr. Harvey, in support of the motion for new trial. *See* Df. Letter, Ex. A. In this sworn affidavit, Mr. Harvey states that in the late evening of May 1, 2002 and early morning of May 2, 2002, he was "hanging out with some friends" in front of Ms. Young's house. *Id.* He claims that he was in possession of a handgun, and that after witnessing the police drive by Ms. Young's house on several occasions, he grew nervous and placed the gun on Ms. Young's porch so that it would not be on his person. *Id.* He claims that shortly after placing the gun there, defendant pulled up in his car to see Ms. Young. *Id.* Mr. Harvey and defendant said hello, and, several minutes later, the police arrived. *Id.* At that point, Mr. Harvey was walking away from the house and defendant was at the screen door, about to enter the porch. *Id.* Mr. Harvey states that the officers then searched the porch, the defendant, and Mr. Harvey, and thereafter charged defendant with possession of Mr. Harvey's .22 caliber Ruger handgun. *Id.*

Due to this new evidence, a motion hearing was set for June 12, 2003. [Docket Item # 30–1.] At the hearing, this Court requested that a further hearing be scheduled in which Mr. Harvey could testify and be cross-examined, in order to determine whether a new trial would be appropriate in light of the new evidence. On June 18, 2003, Mr. Harvey testified before this Court. He testified that on the evening of May 1, 2002, he was in the area of Sheridan and Pulaski selling drugs, and that he was in possession of a gun. *See* Tr. 6/18/03 at 6–8, 23. According to Mr. Harvey, after witnessing police officers drive by, he grew nervous and placed his gun on Ms. Young's porch on the side of a brick post on the floor. *Id.* at 9–10. He stated that Ms. Young had indeed told him to get off her porch, and that earlier that day defendant had also told him to stay off of Ms. Young's property. *Id.* at 28, 33. Mr. Harvey testified that at some point after he placed the gun on Ms. Young's porch, defendant pulled his car up to the corner, got out of his car and was on his way to Ms. Young's house *Id.* at 9. He stated that since he was violating curfew, he began to walk towards defendant, in a direction towards Julia's house, in order to get off the street. *Id.* at 20. Mr. Harvey testified that when police confronted the defendant, Carmichael was on the first step of Ms. Young's house, while Harvey was approximately six feet away. *Id.* at 20.

Mr. Harvey admitted that he had not told the truth to the Grand Jury, and that he had lied to the police officers when he told them he did not know to whom the gun belonged. *Id.* at 10–11, 25. He stated that he was scared of the possible consequences that he could face. *Id.* at 11. Mr. Harvey also acknowledged that he had lied to the Grand Jury about the fact that he

and defendant had arrived together at Ms. Young's house, in an attempt to protect defendant by testifying that he had not seen defendant with a gun prior to arriving at Ms. Young's house. *Id.* at 25, 37.

The circumstances of Mr. Harvey's changed testimony were explored in some depth. According to Mr. Harvey's testimony, after serving a juvenile sentence from November 2002 to April 2003 for a drug-related conviction, he had asked his mother, upon his return home, if she knew what had happened to defendant in this case. *Id.* at 13, 34. He stated that he had done some thinking during his juvenile sentence, and did not want defendant to be punished for something that he did not do. *Id.* at 34. After finding out that defendant was convicted, Mr. Harvey testified that his mother helped him contact an attorney, Michael Kahn, that he told Kahn the truth, and that he signed the affidavit, dated April 24, 2003. *Id.* at 14. His testimony at the hearing reaffirmed that his affidavit was true, that the loaded handgun was his, and that defendant Cory Carmichael knew nothing about this gun. *Id.* at 14–16, 36. Mr. Harvey testified that he had not talked to defendant since Carmichael was arrested by the Camden police on May 2, 2002, and that he also had not talked with any of defendant's family members or friends. *Id.* at 30–31.

### DISCUSSION

The defendant moves this Court to grant a judgment of acquittal under Rule 29, Fed.R.Crim.P., and in the alternative, a new trial under Rule 33, Fed.R.Crim.P. Each motion will be discussed in turn below.

### 1. Motion for Judgment of Acquittal

Defendant argues in his brief of April 17, 2003, for a judgment of acquittal on the basis that reasonable minds could not find defendant guilty beyond a reasonable doubt. *See* Df. Br., at 13. Defendant claims there were major inconsistencies in the testimony of the government's witnesses, in particular, the testimony between Officers Pike and Ramos. Defendant asserts that because these inconsistencies are irreconcilable, the Court should enter a verdict of not guilty notwithstanding the verdict reached by the jury. *Id.* The government answers that because the scope of judicial review of a jury's verdict on a motion for Judgment of Acquittal is highly deferential, and the jury resolved any inconsistencies in favor of the government, the motion should be denied. *See* Answer, at 6, 9.

■ According to Rule 29(a) and (c) of the Federal Rules of Criminal Procedure, a court may enter a judgment of acquittal if it finds that as a matter of law the evidence is insufficient to sustain a conviction. In reviewing a motion for Judgment of Acquittal, the court must " 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.' " *United States v. Smith,* 294 F.3d 473, 476 (3d Cir.2002) (quoting *United States v. Wolfe,* 245 F.3d 257, 262 (3d Cir.2001)). Further, the court is required to draw " 'all reasonable inferences in favor of the jury's verdict.' " *Smith,* 294 F.3d at 476–77 (quoting *United States v. Anderskow,* 88 F.3d 245, 251 (3d Cir.1996)).

The defendant must also overcome the jury's special province in evaluating witness credibility and conflicting testimony. *United States v. Hakim,* No. 02–CR–131, 2002 WL 31151174, at *6 (E.D.Pa. Sept.24, 2002) (citing *United States v. McGlory,* 968 F.2d 309, 321 (3d Cir.1992)). Further, the court in *United States v. Scarfo,* 711 F.Supp. 1315, 1334 (E.D.Pa.1989) held that "a court may not grant a motion for acquittal based on conflicting testimony, that is,

testimony of a questionable quality; it is up to the jury to weigh conflicting testimony, determine credibility, and ultimately draw factual inferences." Thus, "a finding of insufficiency should be confined to cases where the prosecution's failure is clear." *Smith,* 294 F.3d at 477 (quoting *United States v. Leon,* 739 F.2d 885, 891 (3d Cir. 1984)).

■ Based upon these standards, the Court cannot grant defendant's motion for Judgment of Acquittal. Though it may be true that Officers Pike and Ramos had slightly differing accounts of the events leading up to defendant's arrest, these discrepancies do not rise to the requisite level to lead the Court to believe that no reasonable jury could have reached a verdict of guilty.[3] It was within the discretion of the jury to resolve these inconsistencies in favor of the government. The jury could reasonably have attributed these inconsistencies to the fact that, by the time of trial, a significant period had elapsed since the event in question, and also the fact that the questions were highly detailed, seeking recollection of precise actions at the scene of nearly time-lapse dimension. Officers Pike and Ramos were both able to put defendant at the scene, and both testified that the defendant had opened the door to the porch and had bent down to place something inside the door when they arrived at Ms. Young's house that evening. *See* Tr. 1/13/03, at 18; Tr. 1/14/03, at 111. The jury evidently discredited defendant's testimony, crediting the police officers' testimony instead. Whatever the jury's reasoning may have been, this Court cannot conclude that no reasonable jury would have arrived at a guilty verdict beyond a reasonable doubt. Accordingly, defendant's motion for Judgment of Acquittal notwithstanding the verdict is denied.

## 2. Motion for New Trial

In the alternative, defendant also moves this Court to order a new trial based on newly discovered evidence, disclosed in an affidavit by Mr. Harvey signed on April 24, 2003. In this affidavit and in his live testimony subject to careful cross-examination as well as questioning by the Court, Mr. Harvey admitted that the gun in question had belonged to him, and not defendant, implying that defendant was wrongfully convicted by the jury of this crime. *See* Df. Letter, Ex. A at 1. He was remorseful for lying to the police and to the Grand Jury and he wished to take responsibility. Federal Rule of Criminal Procedure 33(a) states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Thus, the issue is whether in light of the new evidence, justice requires that a new trial be granted.

■ The Third Circuit has held that a five-part test applies to determine whether a new trial based on newly discovered evidence should be granted. *United States v. Jasin,* 280 F.3d 355 (3d Cir.2002). *First,* the evidence must in fact be newly discovered since the trial; *second,* the facts must be alleged from which the court may infer diligence on the movant's part; *third,* evidence relied on must not be merely cumulative or impeaching; *fourth,* evidence must be material to the issues involved; and *fifth,* evidence must be of

---

**3.** The defendant points out that Officer Pike's and Officer Ramos's testimony differ as to how far the defendant entered the porch, which arm of the defendant entered the porch, whether the defendant was walking towards or away from Officer Pike, and whether the defendant knocked on the door. *See* Df. Br., at 14. The testimony is consistent, however, in the important particular of seeing defendant on the top porch step or just inside the porch door.

such nature that on a new trial, the newly discovered evidence would probably produce an acquittal. *Id.* at 361 (citing *United States v. Iannelli,* 528 F.2d 1290, 1292 (3d Cir.1976)). Each of these factors is now examined.

### a) Evidence must be newly discovered

■ As stated above, in order for a new trial to be granted on the basis of newly discovered evidence, the evidence must indeed be "newly discovered." The Third Circuit has held that evidence that is known, but unavailable at trial does not constitute "newly discovered evidence" within the meaning of Rule 33. *Id.* at 362.

■ Defendant asserts that the newly discovered evidence in this case, which was both unavailable and unknown at trial, consists of the facts asserted in the affidavit of Mr. Harvey dated April 24, 2003, wherein Mr. Harvey states that he, and not defendant, possessed the handgun and left it on Ms. Young's porch. *See* Df. Letter, at 1. Nothing in Mr. Harvey's grand jury testimony could have alerted defendant to the prospect that Mr. Harvey could be a helpful witness if called at trial. Further, on June 18, 2003, Mr. Harvey's testimony revealed otherwise unknown facts concerning defendant's case, such as the fact that Mr. Harvey had lied to the Grand Jury about defendant picking him up in his car, because he wanted to be able to say that he had seen the defendant without a gun, in a misguided attempt to protect him. The government argues that this evidence was in fact available at the time of trial, because there were inconsistencies between Mr. Harvey's and defendant's testimony concerning whether or not Mr. Harvey was picked up in defendant's car, and thus one could draw the conclusion that Mr. Harvey was trying to protect defendant, because the gun in fact did belong to Mr. Harvey, and thus this was not new evidence. *See* Tr. 6/18/03 at 43.

Harvey's new testimony also supplies the reason he was in possession of the loaded gun, volunteering that he was carrying it for protection because he was dealing drugs. *Id.* at 23–24. He testified that the gun was loaded and had a bullet in the chamber. *Id.* at 25. He put it on Julia Young's porch because he thought it was a safe place to hide it from police. *Id.* at 26.

Though inconsistencies in the testimony did exist, it is a reach to imply that these inconsistencies were obvious ones that could have led the defense to the conclusion that Mr. Harvey was the one in possession of the gun and would in fact admit to it if called to trial. Mr. Harvey had sworn before a Grand Jury that he had told police that he did not know who the gun belonged to, and that his testimony was as truthful and as detailed as possible. *See* Df. Letter, Ex. B at 18, 20. At that point, since Mr. Carmichael was unaware of Mr. Harvey's ownership of the gun, there was no reason for the defense to assume that the gun belonged to Mr. Harvey, and that Mr. Harvey would admit this fact. Accordingly, the fact that Mr. Harvey now asserts that he was the owner of the gun that defendant was charged with certainly constitutes new evidence that was not available or known to the defendant at the time of trial. Thus, the first prong of the test is satisfied.

### b) Diligence on the movant's part

The movant must have exercised diligence in order to meet the second prong of the test. The defendant contends that reasonable diligence at the time of pretrial investigation would not have disclosed that Mr. Harvey would in fact claim responsibility for the weapon. *See* Df. Letter, at 3. First, defendant points to the fact that Mr. Harvey certainly did not make any statement to the Grand Jury that he knew

anything about the gun. *Id.* Further, defendant contends that Mr. Harvey's testimony did not offer any reasonable prospect that upon further questioning Mr. Harvey would divulge that it was he who possessed the weapon and left it on the porch. *Id.* The government contends that the defense had the opportunity to call Mr. Harvey as a witness, failed to, and thus did not exercise diligence.

Cases in this circuit have held that if evidence was not available during the trial through no fault of the defendants, then the second element of the test is met. *See United States v. Pelullo,* 971 F.Supp. 159, 162 (D.N.J.1997); *see also United States v. Adams,* 759 F.2d 1099, 1108 (3d Cir.1985). In *Pelullo,* the newly discovered evidence consisted of information disclosed during attorney ethics proceedings, which were not available to the public at the time of trial. *Pelullo,* 971 F.Supp. at 162. The court held that this was not a case of lack of diligence, as the defendant would have had no way to access the information, and the defendant moved with diligence after learning of the new evidence. *Id.* Similarly, here the defendant had no way of knowing at the time of trial that Mr. Harvey was the owner of the gun, or at least that he would admit to being the owner. Further, soon after learning of this new evidence, defendant submitted a letter Brief to this Court, and thus acted diligently with respect to the newly discovered evidence. Based upon the standard advanced in *Pelullo,* defendant did in fact act with diligence.

It is true that the defense declined to call Mr. Harvey as a witness, at which point it is possible that this newly found evidence may have emerged, had Harvey undergone a change of conscience at the January trial. However, Mr. Harvey had testified before a Grand Jury that he had told police that the gun did not belong to him, and that his testimony was as truthful and as detailed as possible. *See* Df. Letter, Ex. B, Tr. 8/20/02 at 18, 20. At that time, there was no reason to assume that Mr. Harvey would recant his sworn testimony. Further, it would not have been a wise tactical move for the defense to call Mr. Harvey. First, it was clear to the defense that Mr. Harvey had lied to the Grand Jury about the fact that defendant had picked Mr. Harvey up in his car, and thus not only was the witness not credible, but this conflicting testimony had the potential to diminish defendant's credibility, and perhaps implicate defendant. Secondly, Mr. Harvey had testified to the Grand Jury that he could place defendant on the front steps of Ms. Young's house, which would only further hinder defendant's case. *See* Df. Letter, Ex. B, Tr. 8/20/02 at 12. No reasonable defense attorney, upon reading Mr. Harvey's grand jury testimony, would have seen calling him as a witness as a wise trial strategy. Further, Harvey was in a juvenile detention facility during the months for Carmichael's trial preparation and trial, making an interview difficult, with no reasonable likelihood of getting the straight story from him while in custody. Thus, there was not a lack of diligence on defendant's part, and the second element is met.

### c) Evidence must not be merely cumulative or impeaching

■ To satisfy the third prong of the test, the newly discovered evidence cannot be merely cumulative. *United States v. Adams,* 759 F.2d 1099, 1108 (3d Cir.1985). In *Adams,* a witness had admitted to at least twenty instances of unsavory conduct, and the jury still took his testimony as credible. The newly discovered evidence brought forth by the defendant in *Adams* referred to yet another mundane crime, and the court concluded that this testimony would not " 'be the straw that broke the camel's back' " in terms of the

witness's credibility. *Id.* Defendant's case can be distinguished from *Adams.* The newly discovered evidence here is not merely cumulative of other evidence that would discredit a witness; rather, it goes to the heart of the defendant's ultimate guilt or innocence in the matter. It is supportive of Carmichael's testimony, but not cumulative to it, since Carmichael testified that he did not know whose gun it was. Consequently, this evidence cannot be considered merely cumulative for purposes of the five-part test.

The newly discovered evidence also cannot be considered merely impeaching. The Third Circuit held in *United States v. Saada,* 212 F.3d 210, 216 (3d Cir.2000), that when there is no exculpatory connection between the newly found evidence and the case, then that evidence is merely impeaching, and does not satisfy the third element of the test. In *Saada* the defendant filed a motion for a new trial, after one of the witnesses that testified against him was found to have induced an innocent party in another case to give false testimony so as to receive a reduced sentence for cooperating with the government. *Id.* at 215. The defendant claimed that this act, which occurred after the defendant's conviction, represented new evidence that undermined the credibility of the witness at his trial. *Id.* Defendant's case can be distinguished from *Saada.* Here, the newly discovered evidence is not being used to discredit the testimony of Mr. Harvey, because Mr. Harvey was not even called as a witness at trial. Rather, the new evidence starkly calls into question the validity of defendant's guilt, and clearly has a potential exculpatory relationship to defendant's conviction. Exculpatory evidence is never more probative than the confession of a third party, if believed. Accordingly, the third prong of the test is met because the newly discovered evidence is neither merely cumulative nor impeaching.

### d) Evidence must be material to the issues involved

Possession, ownership and placement of this weapon are obviously material to the principal issue at trial in this case. The Third Circuit held in *United States v. Barbosa,* 271 F.3d 438, 468 (3d Cir.2001), that if newly found evidence is immaterial to the issues involved in the case, a motion for a new trial should be denied. In *Barbosa,* the new evidence consisted of the discovery of additional payments and reward monies to two government informants who had testified against the defendant in his trial for which he was charged with possessing with the intent to distribute more than 50 grams of cocaine base. *Id.* at 444, 467. The court held that because this payment was not material to the issue of entrapment, which was Barbosa's defense, the defendant could not satisfy the fourth prong of the standard. *Id.* at 468.

Defendant's case is distinct from *Barbosa.* Defendant was charged with the unlawful possession of a weapon, and thus his possession of that weapon is material to his guilt in the matter. Newly found evidence which calls that possession into question, as Mr. Harvey's affidavit does, is certainly material to the offense to which defendant was charged, because it has the potential to exculpate him. Therefore, defendant satisfies the fourth prong of the standard.

### e) The newly discovered evidence would probably produce an acquittal

■ Defendant argues that the fifth element of the test is satisfied, because in light of the new testimony from Mr. Harvey, a jury would likely acquit defendant in a new trial. Defendant correctly points out that all that is required for an acquittal is a reasonable doubt that defendant com-

mitted this crime, and not a belief that the defendant is necessarily innocent of the crime. The government contends that because of contradictions between the testimony of Mr. Harvey and other witnesses, and because of the fact that Mr. Harvey has previously lied before a Grand Jury, his testimony is not credible and thus would not likely lead to an acquittal of defendant.

Courts have indicated that the impact of recanted testimony as a basis for a new trial motion depends both on the credibility of the recanting witness and the materiality of his testimony. *Landano v. Rafferty,* 670 F.Supp. 570, 583 (D.N.J.1987) (citing *Mastrian v. McManus,* 554 F.2d 813, 823 (8th Cir.1977)). There is no doubt that Mr. Harvey's testimony is material to defendant's case. Thus, assessing Mr. Harvey's credibility is crucial to ascertaining the probability that a new trial would result in an acquittal.

In *United States v. Morales,* Crim. No. 90–441–2, 1991 WL 276022, at *2 (E.D.Pa. Dec.18, 1991), the court held that although a witness who could introduce new evidence did have inconsistencies in her testimony, the defendant is entitled to have a jury evaluate the witness's credibility. In *Morales,* the defendant sought to introduce, as newly discovered evidence, the testimony of the sister-in-law of his co-defendant, who testified that she did not observe the defendant carrying a bag, presumably of cocaine, when he entered the co-defendant's home. *Id.* at *1. The court granted a new trial based on this evidence, despite the fact that the new witness's testimony had various inconsistencies. *Id.*

Similarly, here, defendant seeks to introduce the testimony of a new witness who not only brings new evidence to his case, but evidence that has a strong potential to exonerate defendant. It is true that some of Mr. Harvey's testimony on June 18, 2003, was contradictory to the testimony offered at trial by Officer Pike or defendant. Some factual inconsistencies are not particularly important, such as, for example, when Mr. Harvey denies that when the police initially approached someone yelled "yo" before the group of individuals dispersed, as testified to by Officer Pike. *See* Tr. 6/18/03, at 26. Further, defendant testified that he had told Mr. Harvey to get off the porch that evening, whereas, Mr. Harvey testified that defendant had told him to stay off the porch earlier that day. *Id.* at 39–40. Despite the fact that Mr. Harvey's testimony may have inconsistencies, *Morales* lends support to the contention that it is still up to a jury in a new trial to evaluate its merit.

At the June 18, 2003, hearing, the government focused on a specific inconsistency between the testimony of Mr. Harvey and that of defendant. Defendant had testified at trial that he was in front of the house when he saw the officers approaching, that he walked down Pulaski towards Officer Pike, and that they met each other three houses away from Ms. Young's house. *See* Tr. 6/18/03, at 56; *see also* Tr. 1/14/03, at 166. The government points out that Mr. Harvey's testimony, both before the Grand Jury and at the June 18, 2003 hearing, was that defendant stopped on the steps, which is inconsistent with defendant's testimony. *See* Tr. 6/18/03, at 21; *see also* Def. Letter, Ex. B Tr. 8/20/02, at 10. In addition to the support that *Morales* lends, this factual discrepancy is not significant. This Court notes that Ms. Young's home is a "row home," in which each there is only a few feet between the street and the door, and in which each house is extremely close to one another. Due to this fact, it is highly plausible that Mr. Harvey is testifying honestly as to what he saw, but because of the proximity of the steps to the street, he was simply mistaken about defendant's location. Thus, this discrepancy does not indicate

that either individual provided testimony that was not credible.

The government argues that Mr. Harvey's testimony may be questionable because of the fact that he lied before a Grand Jury, and he has now changed his version of events. Courts have stated that recanted testimony is inherently suspect. *Simmons v. Arvonio*, 796 F.Supp. 777 (D.N.J.1992) (citing *United States ex rel. Rice v. Vincent*, 491 F.2d 1326, 1332 (2d Cir.1974); *United States v. Mackin*, 561 F.2d 958, 961 (D.C.Cir.1977)), *rev'd on other grounds*, 44 F.3d 1160 (3d Cir.1995). However, based upon the circumstances surrounding Mr. Harvey's confession, there is no reason for this Court to doubt his intentions or the validity of his new testimony. To reach the assertion that Harvey lied to the grand jury necessarily implies that he is telling the truth now; if so, Cory Carmichael has been wrongly convicted. Mr. Harvey testified that he did not tell the full truth concerning his possession of the gun during the Grand Jury testimony because he was scared, and that he fabricated the story about defendant picking him up in a car in order to help to exonerate the defendant for a crime for which he was indeed responsible. *See* Tr. 6/18/03, at 25, 37. He also testified that after fulfilling his juvenile sentence, he had done some thinking, wanted to tell the truth, and did not want the defendant to serve time for something he did not do. *Id.* at 34. His mother played a role in his decision to come forward in April. *Id.* Further, Mr. Harvey stated that he had not had any contact with defendant since the evening of the arrest, and came forth with this new evidence on his own accord. *Id.* at 30–31.

Mr. Harvey took a substantial risk to himself in coming forward with this new evidence, because by doing so, he himself could face prosecution for perjury and possessing a weapon. *See* Tr. 6/18/03, at 38, 42. This fact also suggests that Mr. Harvey's motives are decent. Further, voluntary aspects of Mr. Harvey's testimony, such as the fact that Ms. Young had instructed him to get off the porch that evening and that his gun had a bullet in the chamber, do corroborate with other witnesses' testimony that was unknown to Harvey, who seemed to have no knowledge of actual trial testimony. This Court finds no reason why it should not find Mr. Harvey's affidavit or testimony credible, and thus there is a strong possibility that in light of this evidence at a new trial, and consistent with defendant's own testimony, the jury would acquit the defendant of the crime for which he was charged. In other words, it is likely that reasonable doubt of defendant's guilt will emerge at the retrial. Accordingly, the fifth element of the test is satisfied.

For all these reasons, it would be a miscarriage of justice not to set aside the verdict and grant a new trial, due to the distinct possibility that the defendant, if retried, will be acquitted based upon credible new evidence not previously available, by one who has voluntarily confessed to this crime.

### CONCLUSION

For the reasons expressed in this Opinion, the Court denies petitioner's motion for Judgment of Acquittal, and grants petitioner's motion for a new trial based on newly discovered evidence. The accompanying Order is entered.

### ORDER

THIS MATTER having come before the Court on motion of Defendant Cory Carmichael for Judgment of Acquittal, pursuant to Federal Rule of Criminal Procedure 29(c), and in the alternative a new trial based on newly discovered evidence, pursuant to Federal Rule of Criminal Proce-

 

dure 33; and the Court having considered the submissions of Defendant and of the United States; and for the reasons set forth in the Opinion of today's date;

IT IS on this 2nd day of July, 2003, hereby

ORDERED that Defendant's motion for Judgment of Acquittal be and hereby is *DENIED;* and that Defendant's motion for new trial be and hereby is *GRANTED;* and

IT IS FURTHER ORDERED that the verdict of Guilty entered on January 15, 2003 is hereby *VACATED* for a new trial.